No. 00-663

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 47

STATE OF MONTANA,

Plaintiff and Respondent,

v.

CARLOS A-LAIL MUHAMMAD,

Defendant and Appellant.

APPEAL FROM:  District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Marge Johnson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kristina Guest, Appellate Defender Office, Helena, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Cregg W. Coughlin,
Assistant Attorney General, Helena, Montana

Brant S. Light, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs: August 9, 2001

Decided:  March 18, 2002
Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Carlos A-Lail Muhammad ("Muhammad") appeals from the June 7, 2000, Order entered by the Montana Eighth Judicial District Court, Cascade County, revoking his deferred sentence for violating its sentencing condition requiring that he not reside or work within Cascade County. Additionally, Muhammad appeals from the District Court's imposition of the following conditions in its June 7, 2000, Order requiring that: he post a prominent sign at every entrance of his residence stating, "CHILDREN UNDER THE AGE OF 18 ARE NOT ALLOWED BY COURT ORDER", he pay $5,000.00 in restitution, and he obtain the approval of an interstate compact agreement from treatment providers in Montana and the District Court. We affirm in part, vacate in part and remand for proceedings consistent with this Opinion.

¶2 The issues presented on appeal are as follows:

¶3 1. Whether the District Court abused its discretion when it revoked Muhammad's deferred sentence based upon finding Muhammad violated its sentencing condition that he not reside or work within Cascade County?

¶4 2. Whether the District Court illegally sentenced Muhammad to post a prominent sign at every entrance of his residence stating, "CHILDREN UNDER THE AGE OF 18 ARE NOT ALLOWED BY COURT ORDER"?

¶5 3. Whether the District Court illegally sentenced Muhammad to pay $5,000.00 in restitution?

¶6 4. Whether the District Court had statutory authority to restrict future interstate compact agreements entered into by Muhammad?

BACKGROUND

¶7 On April 16, 1998, the State filed an Information charging Muhammad with the offense of sexual intercourse without consent, a felony, alleging Muhammad committed the offense upon a fourteen year old female on or about April 5, 1998.

¶8 On August 14, 1998, Muhammad signed a plea agreement. Therein, the State agreed to recommend that the District Court impose a sentence of ten years in the Montana State Prison with all ten years of the term suspended based upon Muhammad's compliance with seven conditions, including having no contact with the victim, having no contact with children under age 18, obtaining a sexual offender evaluation by a Montana Sexual Offender Treatment Association ("MSOTA") recognized therapist and abiding by all of the conditions and recommendations for sexual offender treatment made by the therapist, paying for the costs of his own treatment and the costs of the treatment of the victim, abstaining from the use of drugs and alcohol, submitting a blood sample, and registering as a sexual

offender.

¶9    On September 24, 1998, the District Court held a hearing on Muhammad's motion to change his plea of not guilty and enter a plea of guilty pursuant to the non-binding plea agreement.  The District Court granted Muhammad's motion and ordered a pre-sentence investigation ("PSI") and a sexual offender evaluation.

¶10    State Probation and Parole Officer Judy Reimann ("Reimann") prepared the PSI dated February 12, 1999.  In the PSI, Reimann comments that pursuant to the plea agreement the State will recommend to the District Court that Muhammad pay restitution to the victim for any of her counseling.  Also, Reimann states in the PSI that she contacted the victim and her mother on two occasions regarding bills for counseling and was informed by the victim's mother that the victim was not in counseling.  The PSI does not document the victim's pecuniary loss or Muhammad's future ability to pay restitution.

¶11    On May 17, 1999, the District Court held a sentencing hearing.  The District Court ordered that the imposition of the sentence be deferred for a period of six years, contingent upon  Muhammad's compliance with the terms and conditions imposed by the District Court and the Adult Probation and Parole Bureau.  Based upon the sexual offender treatment evaluation conducted by Dr. Michael J. Scolatti, the District Court classified Muhammad as a Level 2 sexual offender.

¶12     In the District Court's May 28, 1999, Order, the District Court imposed twenty-six conditions upon Muhammad's deferred sentence, among which were the following:

   1.  " The Defendant shall be under the supervision of the Adult Probation and Parole Bureau and thereby subject to all of their rules and regulations.  The Court will not approve an interstate compact unless it is approved by Dr. Scolatti or Ron Silvers." [Condition #1]
   2.  "The Defendant may not reside within Cascade County or work here." [Condition #10]
   3.  "The Defendant shall be liable for payment of restitution in the sum of $5,000.00, together with the 10% restitution fee of $250.00, which may not, under law, exceed $250.00.  This shall be made in monthly payments of at least $75.00 per month.  This shall go towards the victim's counseling costs.  Any balance that the victim doesn't use will go into the County Victim Reparation Fund." [Condition #13]
   4.  "The Defendant must post a prominent sign on every entrance of his residence that 'CHILDREN UNDER THE AGE OF 18 ARE NOT ALLOWED BY COURT ORDER'." [Condition # 19]

¶13    On January 7, 2000, Reimann filed a Report of Violation, alleging Muhammad committed three probation violations.  The alleged violations included:

   Montana State Rule #2 Travel:  "You shall not leave your assigned district without first obtaining written permission from your Probation/Parole Officer.

Your assigned district is: Lewis and Clark County."

Supporting Evidence: On December 31/January 1, 2000, the Defendant admitted to traveling to Great Falls, Montana, Cascade County for the new year [sic] without written permission from a probation officer in Helena.

Montana State Rule #8 Laws and Conduct: "You shall comply with all city, county, state, and federal laws and ordinances and conduct yourself as a good citizen. You shall report any arrests or contacts with law enforcement to your Probation/Parole Officer within 72 hours."

Supporting Evidence: On January 1, 2000, at 4:30 a.m. on a Saturday morning, the Defendant's friend, Gina Leah Russell of Helena filed a complaint of a Misdemeanor Assault against her by the Defendant. A misdemeanor warrant was issued on Monday, January 3rd and was served on the Defendant on Wednesday, January 5th of the year 2000 along with a no bond probation warrant.

Special Condition: "That the Defendant may not reside within Cascade County or work here."

Supporting Evidence: The Defendant has returned to Cascade County on two (2) occasions, the first being December 24, 1999 in which he had a travel permit from his probation officer in Helena. He missed his ride and he did not return to Helena until December 29, 1999. The second occurrence was when the Defendant traveled to Cascade County on December 31, 1999/January 1, 2000 for New Years. His friend did not give him a ride back to Helena and therefore has been in Great Falls, Montana, Cascade County since January 1, 2000. He was arrested by this officer on Wednesday, January 5, 2000 and a no bond warrant was placed on him at that time as well as a misdemeanor warrant for a [sic] assault being served on him by Great Falls Police Officer, Mike Stimac.

¶14    On January 18, 2000, the State filed a petition for revocation of deferred sentence. The District Court held a revocation hearing on June 5, 2000. Muhammad admitted he traveled to Cascade County without a travel permit and denied violating the other two conditions. The District Court determined that Muhammad did not violate Montana State Rule #8 Laws and Conduct, but did violate its special condition that he not reside or work within Cascade County.

¶15    Thereafter, the District Court revoked Muhammad's deferred sentence and sentenced Muhammad to the Department of Corrections ("DOC") for twenty years, with fifteen years suspended. In its June 7, 2000, Order, the District Court imposed the same twenty-six conditions on Muhammad as it had in its May 28, 1999, Order.

¶16    Muhammad filed a notice of appeal in the District Court on July 26, 2000.

## STANDARD OF REVIEW

¶17    We review a district court's decision to revoke a deferred or suspended sentence by determining whether the court abused its discretion and whether the court's decision was supported by a preponderance of the evidence.  State v. Brister, 2002 MT 13, ¶ 12, 308 Mont. 154, ¶ 12, __ P.3d __, ¶ 12 (citations omitted).  See also State v. Docken (1995), 274 Mont. 296, 298, 908 P.2d 213, 214 (citations omitted).  However, where the issue, as here, is whether the court followed applicable statutory requirements, the question is one of law over which our review is plenary.  Brister, ¶ 12 (citation omitted).

¶18    Our review of a district court's criminal sentence is limited to questions of legality.  State v. Pritchett, 2000 MT 261, ¶ 6, 302 Mont. 1, ¶ 6, 11 P.3d 539,  ¶ 6 (citing State v. Montoya, 1999 MT 180, ¶ 15, 295 Mont. 288, ¶ 15, 983 P.2d 937, ¶ 15.  Therefore, our review is confined to whether the sentence is within the parameters provided by statute.  Pritchett, ¶ 6 ( citing Montoya, ¶ 15).

## DISCUSSION
## ISSUE 1

¶19    Whether the District Court abused its discretion when it revoked Muhammad's deferred sentence based upon finding Muhammad violated its sentencing condition that he not reside or work within Cascade County?

¶20    Muhammad alleges the District Court illegally sentenced him and violated his fundamental constitutional rights, including his freedom of travel, association, and assembly, without articulating a compelling governmental interest sufficient to justify such infringement when it imposed the sentencing condition that he not reside or work within Cascade County.  Additionally, Muhammad contends the banishment condition is overly broad and unnecessary, as it does not serve the purposes of rehabilitation or protection of society.  Muhammad thus argues the banishment condition is illegal because it violates § 46-18-202(1), MCA.  Similarly, Muhammad asserts the condition was not narrowly drawn since the District Court imposed alternative conditions which addressed Muhammad's rehabilitative needs while protecting the needs of society, such as requiring that Muhammad have no contact with the victim or her family and have no contact with females under the age of 18.  Therefore, Muhammad argues the District Court abused its discretion when it revoked his deferred sentence based only upon the finding that he violated its illegal condition.

¶21    The State asserts Muhammad's challenge to the District Court's sentence is waived because Muhammad failed to object to the banishment condition during the proceedings in the District Court and also failed to assert the alleged error on appeal.  In addition, the State maintains Muhammad has not satisfied his burden on appeal since he failed to address his admitted violation of Montana State Rule No. 2 Travel (leaving Lewis and Clark County without permission).  Further, the State argues conditions restricting a probationer from a single county are not illegal per se and are reasonable when they serve the purposes of probation, as does the condition imposed on Muhammad.

¶22    After reviewing the record, we conclude we are without jurisdiction to review the legality of the conditions, including the banishment condition, imposed in the District Court's May 28, 1999, Order. Rule 5(b), M.R.App.P., requires that, "[i]n criminal cases an appeal from a judgment must be taken within 60 days." Here, Muhammad first filed his notice of appeal on July 26, 2000, more than one year after the imposition of the banishment condition in the May 28, 1999, Order. Therefore, since Muhammad failed to timely file a notice of appeal from the May 28, 1999, Order, he is precluded from now challenging the legality of the conditions therein imposed. See State v. Richards (1997), 285 Mont. 322, 948 P.2d 240. Having held we lack jurisdiction to address the legality of the banishment condition imposed in the May 28, 1999, Order, we therefore hold we lack jurisdiction to determine whether the District Court abused its discretion in revoking Muhammad's deferred sentence based upon his violation of that condition. Accordingly, we affirm the District Court's revocation of Muhammad's deferred sentence.

¶23    Nonetheless, since Muhammad timely appealed from the District Court's June 7, 2000, Order, and Muhammad alleges the conditions imposed therein are illegal, we conclude that we have jurisdiction to review the legality of the contested conditions imposed in the June 7, 2000, Order. While the State contends we lack jurisdiction to consider the contested conditions imposed in the June 7, 2000, Order since Muhammad failed to object to the conditions at the time of sentencing, we have held that we will review a sentence which is illegal or exceeds statutory mandates, even if no objection is made at the time of sentencing. See Brister, ¶ 16 (citing State v. Lenihan (1979), 184 Mont. 338, 342-343, 602 P.2d 997, 1000). As we have previously pointed out, "[i]t appears to be the better rule to allow an appellate court to review any sentence imposed in a criminal case, if it is alleged that such sentence is illegal or exceeds statutory mandates, even if no objection is made at the time of sentencing." Brister, ¶ 16 (quoting Lenihan, 184 Mont. at 343, 602 P.2d at 1000). As a practical matter, "a defendant often times must remain silent even in the face of invalid conditions" to guard against the possibility that if the defendant objects to an invalid condition, the sentencing judge may decide to forego the imposition of a deferred sentence and send the defendant to prison. Lenihan, 184 Mont. at 343, 602 P.2d at 1000. Consequently, we will determine whether the banishment condition imposed in the June 7, 2000, Order is illegal and should thereby be vacated.

¶24    We have held that the law in effect at the time of the crime controls as to the possible sentence. Brister, ¶ 26 (citing State v. Stevens (1995), 273 Mont. 452, 455, 904 P.2d 590, 592). Hence, we will apply the statutes in effect at the time Muhammad committed the crime of sexual intercourse without consent to determine if the District Court's sentence is within the parameters provided by statute. Montana statutory provisions provide that a sentencing judge may impose conditions and restrictions on the offender's freedom of association, § 46-18-202(1)(c), MCA (1997), restrictions on the offender's freedom of movement, § 46-18-202(1)(d), MCA (1997), and "any other limitation reasonably related to the objectives of rehabilitation and the protection of the victim and society" § 46-18-202(1)(e), MCA (1997). Accordingly, before reaching the constitutional issues raised, we must analyze whether the banishment condition is reasonably related to the objectives of rehabilitation and the protection of the victim and society to determine whether the condition is within the parameters provided by statute.

¶25    We have held that it is an illegal condition of parole to order a defendant deported from the United States, as it is beyond the jurisdiction of a district court to order anyone deported without due process of

the law. State v. Ahmed (1996), 278 Mont. 200, 924 P.2d 679, cert. denied, 519 U.S. 1082 (1997). The issue of banishment from a smaller geographic area, such as Cascade County, as a condition of probation is a matter of first impression in Montana. A majority of the jurisdictions examining the issue have held that a probation condition banishing a defendant from a geographic area, such as a state or a county, is typically broader than necessary to accomplish the goals of rehabilitation and the protection of society, and thus is in violation of statutory provisions regarding probation. See Jones v. State (Alaska Ct. App. 1986), 727 P.2d 6 (vacating condition prohibiting the defendant from being within a 45-block area since the condition is "unnecessarily severe and restrictive", unlike a condition which prohibits the frequenting of certain types of establishments, such as bars, where the specifically prohibited activity will occur); State v. Franklin (Minn. 2000), 604 N.W.2d 79 (vacating condition excluding defendant from Minneapolis, Minnesota); State v. Ferre (Or. Ct. App. 1987), 734 P.2d 888 (determining condition restricting the defendant from the county where the victim lives is broader than necessary, but indicating condition limiting banishment to the town, instead of the county, where the victim resides would be reasonable); and Johnson v. State (Tex. Ct. App. 1984), 672 S.W.2d 621 (determining banishment from county where defendant resides is unreasonable).

¶26 Some jurisdictions have invalidated banishment conditions based upon a public policy rationale. See People v. Baum (Mich. 1930), 231 N.W. 95, 96, stating:

> To permit one state to dump its convict criminals into another would entitle the
> state believing itself injured thereby to exercise its police and military power,
> in the interest of its own peace, safety, and welfare, to repel such an invasion.
> It would tend to incite dissension, provoke retaliation, and disturb that fundamental
> equality of political rights among the several states which is the basis of the
> Union itself. Such a method of punishment is not authorized by statute, and is
> impliedly prohibited by public policy.

Also see Rutherford v. Blankenship (W.D. Va. 1979), 468 F.Supp. 1357, 1360 ("[T]he power to banish, if it exists at all, is a power vested in the Legislature and certainly where such methods of punishment are not authorized by statute, it is impliedly prohibited by public policy."); and State v. Charlton (N.M. Ct. App. 1992), 846 P.2d 341, 344 (endorsing the public policy rationale stated in Baum and Rutherford).

¶27 However, some jurisdictions have held that probation conditions restricting a defendant from geographic areas encompassing a county or areas within a city or town are reasonably related to serve the goals of rehabilitation and the protection of society. See Oyoghok v. Municipality of Anchorage (Alaska Ct. App. 1982), 641 P.2d 1267 (affirming condition restricting defendant, convicted of soliciting for prostitution, from being within a two block radius area where street prostitution occurs); and People v. Brockelman (Colo. 1997), 933 P.2d 1315 (affirming condition restricting defendant, convicted of assault, from the two towns where the victim lived and worked).

¶28 We conclude that the banishment condition imposed in the District Court's June 7, 2000, Order violates § 46-18-202(1)(e), MCA (1997), as the condition is not reasonably related to the goals of

rehabilitation and is broader than necessary to protect the victim. Although the District Court stated no reasons for the imposition of the condition, presumably the condition was imposed to protect the victim. (Judge Johnson stated at the revocation hearing, "I did not want to subject this victim to ever seeing you in this county.") The record establishes that the District Court had facts before it at the time of sentencing which would render the condition unduly severe and punitive to the point of being unrelated to rehabilitation. Specifically, Muhammad was residing in Cascade County at the time of the sentencing hearing and had family there. However, Muhammad had no family in Lewis and Clark County. In addition, Muhammad was precluded from petitioning the District Court to temporarily lift the restriction, as illustrated by the District Court's statement during the revocation hearing that he was "not to be here, period, end of story, ever." Further, in addition to imposing the banishment condition, the District Court imposed less restrictive means to rehabilitate Muhammad and to protect the victim and society, including the imposition of the following requirements: that he obtain sexual offender treatment, have no contact with the victim or her family, register as a sexual offender and as a violent offender, have no contact with females under the age of 18, have no employment, service or recreational pursuits which involve the supervision of children, not frequent places where children congregate, and not live within two blocks of an area where children congregate.

¶29    Since we have determined that the banishment condition is not reasonably related to the goals of rehabilitation and the protection of the victim and society in violation of § 46-18-202(1)(e), MCA (1997), we will not address Muhammad's constitutional arguments. Accordingly, we vacate the banishment condition imposed in the District Court's June 7, 2000, Order.

## ISSUE 2

¶30    Whether the District Court illegally sentenced Muhammad to post a prominent sign at every entrance of his residence stating, "CHILDREN UNDER THE AGE OF 18 ARE NOT ALLOWED BY COURT ORDER"?

¶31    Muhammad argues the District Court's condition requiring that he post warning signs at every entrance of his residence is an illegal and unconstitutional condition, as it infringes upon his right to privacy. Additionally, Muhammad claims the condition exceeds statutory parameters regarding the dissemination of information concerning sexual offenders. Therefore, Muhammad contends the condition is unreasonable, unnecessary and should be stricken from the District Court's June 7, 2000, Order.

¶32    The State maintains Muhammad failed to object to the condition in the District Court; and thus, this Court is without jurisdiction to hear the issue. Moreover, the State contends the sign does not exceed what is statutorily authorized regarding the dissemination of information about sexual offenders since nothing on the sign indicates Muhammad is a sexual offender. The State asserts that even if the sign revealed confidential criminal justice information, such information may be disseminated if the District Court considers dissemination necessary, in accordance with § 44-5-302(1)(b), MCA, or finds that "the demands of individual privacy do not clearly exceed the merits of public disclosure", pursuant to § 44-5-303(2), MCA. In addition, the State claims Muhammad's argument fails because he does not challenge the "public safety" basis for the probation condition, rather Muhammad in fact concedes the

basis.

¶33    As discussed previously herein, we are without jurisdiction to address the legality of the condition imposed in the District Court's May 28, 1999, Order, because Muhammad failed to timely appeal from the May 28, 1999, Order, pursuant to Rule 5(b), M.R.App.P.  See Richards, 285 Mont. 322, 948 P.2d 240.  However, we will address whether the condition reimposed in the District Court's June 7, 2000, Order is within statutory parameters since Muhammad timely appealed from the June 7, 2000, Order, and alleges the reimposed condition is illegal.  See Brister, ¶ 16.

¶34    Section 46-18-202(1)(e), MCA (1997), provides that the sentencing judge may impose any condition "reasonably related to the objectives of rehabilitation and the protection of the victim and society."  Whether the requirement that a sexual offender post a sign forbidding individuals under the age of 18 is reasonably related to the objectives of rehabilitation and the protection of the victim and society, pursuant to § 46-18-202(1)(e), MCA (1997), is a matter of first impression in Montana.

¶35    Several jurisdictions have examined whether similar probation conditions requiring the placement of signs on defendants' personal and/or real property are reasonably related to the goals of rehabilitation and the protection of the victim and society.  The majority of the jurisdictions examining the issue have held that such conditions are not reasonably related to the goals of rehabilitation and the protection of society.  See People v. Meyer (Ill. 1997), 680 N.E.2d 315, 320 (stating "[c]onditions which label a defendant's person or property have a stigmatizing effect and are considered shaming penalties" (citing D. Kahan, What Do Alternative Sanctions Mean?, 63 U. Chi. L. Rev. 591 (1996))).  See also State v. Burdin (Tenn. 1996), 924 S.W.2d 82.

¶36    Some jurisdictions allow probation conditions requiring the placement of a sign on defendants' personal and/or real property.  See Lindsay v. State (Fla. Dist. Ct. App. 1992), 606 So.2d 652, 656 (the court noted: "Rehabilitation and punishment are not mutually exclusive ideas.  They can co-exist in any single, particular consequence of a conviction without robbing one another of effect.").  Also see Ballenger v. State (Ga. Ct. App. 1993), 436 S.E.2d 793.

¶37    We agree with the majority of jurisdictions holding that the imposition of such conditions exceeds express or implicit statutory authority granted to trial courts, as the requirement is not reasonably related to serve the goals of rehabilitation and the protection of the victim and society.  Therefore, we conclude that the condition requiring the placement of signs at every entrance of Muhammad's residence violates § 46-18-202(1)(e), MCA (1997).  This condition, as is the banishment condition, is unduly severe and punitive to the point of being unrelated to rehabilitation.  As noted by other jurisdictions, the effect of such a scarlet letter condition tends to over-shadow any possible rehabilitative potential that it may generate.  Moreover, the District Court imposed less restrictive means to rehabilitate Muhammad and to protect the victim and society, such as requiring that he obtain sexual offender treatment, have no contact with the victim or her family and register as a sexual offender and as a violent offender, which permits the agency that Muhammad is registered with to disseminate his name to the public with the notation that he is a sexual offender, pursuant to § 46-23-508(1)(b)(ii), MCA (1997).

¶38    Whereas we have determined that the sign requirement is not reasonably related to the goals of

rehabilitation and the protection of the victim and society in violation of § 46-18-202(1)(e), MCA (1997), we will not address Muhammad's constitutional arguments. For the foregoing reasons, we vacate the condition requiring the placement of warning signs at every entrance of Muhammad's residence imposed in the District Court's June 7, 2000, Order.
.

## ISSUE 3

¶39    Whether the District Court illegally sentenced Muhammad to pay $5,000.00 in restitution?

¶40    Muhammad relies upon our holding in Pritchett and asserts that the condition requiring him to pay $5,000.00 in restitution is illegal and in excess of statutory authority because the restitution order was not based upon documented evidence of the victim's pecuniary loss or Muhammad's ability to pay restitution. Muhammad contends documented evidence of the victim's pecuniary loss was not presented since the victim never went to counseling and thus, made no request for restitution. Likewise, Muhammad claims documented evidence of his ability to pay restitution does not exist because the PSI, the State, and the District Court never addressed Muhammad's ability to pay restitution in accordance with statutory requirements. In addition, Muhammad points out that the District Court failed to state how it calculated a restitution amount of $5,000.00.

¶41    The State acknowledges the PSI does not contain documentation concerning the amount of restitution. Nevertheless, the State argues Muhammad failed to preserve his claim. Consequently, the State maintains this Court is without jurisdiction to hear the contention.

¶42    As previously discussed herein, we are without jurisdiction to determine whether the restitution condition imposed in the District Court's May 28, 1999, Order was illegal since Muhammad failed to timely appeal from that Order in accordance with Rule 5(b), M.R.App.P. See Richards, 285 Mont. 322, 948 P.2d 240. However, Muhammad timely appealed from the June 7, 2000, Order reimposing the restitution condition and alleges the condition is illegal. Since we have determined that the better rule is to allow an appellate court to review a sentence imposed in a criminal case where the defendant alleges that such sentence is illegal or exceeds statutory mandates, even if no objection is made at the time of sentencing, we will address whether the District Court exceeded the parameters provided by statute when it imposed the restitution condition in its June 7, 2000, Order. See Brister, ¶¶ 16 and 21.

¶43    Although not raised by either party, an issue exists whether the District Court had the requisite authority, pursuant to § 46-18-201, MCA, to impose restitution as a condition of Muhammad's suspended sentence in its June 7, 2000, Order. See State v. Horton, 2001 MT 100, ¶ 28 n.3, 305 Mont. 242, ¶ 28 n.3, 25 P.3d 886, ¶ 28, n.3; and State v. Wilson (1996), 279 Mont. 34, 40, 926 P.2d 712, 716. Since neither the parties nor the District Court considered this issue, we would normally remand the matter to the District Court for consideration. However, having reviewed the record, we conclude that the District Court failed to comply with the procedural requirements stated in § 46-18-242, MCA (1997), and § 46-18-244(2), MCA (1997), as subsequently discussed. Therefore, in avoidance of wasting judicial resources and pursuant to preserving judicial economy, and as we have determined that the restitution condition imposed in the District Court's June 7, 2000, Order is illegal, we vacate the

condition without remanding the matter to the District Court for further proceedings.

¶44    Section 46-18-201(2), MCA (1997), provides that a sentencing judge shall require a defendant to pay full restitution to a victim, in accordance with the procedural requirements stated in § 46-18-241 through § 46-18-249, MCA (1997), if the judge finds that the victim has sustained a pecuniary loss. Accordingly, a district court's imposition of a sentence of restitution is subject to the "detailed procedures and qualifications found in §§ 46-18-241 to 249, MCA." Pritchett, ¶ 7. As in Pritchett, "[p]articularly relevant to the case at hand is the provision designed to ensure that restitution orders are based on documented evidence of the victim's loss and the offender's ability to pay", as stated in § 46-18-242, MCA (1997). Pritchett, ¶ 8.

¶45    Section 46-18-242, MCA (1997), states:

Investigation and report of victim's loss. (1) Whenever the court believes that a victim of the offense may have sustained a pecuniary loss as a result of the offense or whenever the prosecuting attorney requests, the court shall order the probation officer, restitution officer, or other designated person to include in the presentence investigation and report:

(a) documentation of the offender's financial resources and future ability to pay restitution; and

(b) documentation of the victim's pecuniary loss, submitted by the victim or by the board of crime control if compensation for the victim's loss has been reimbursed by the crime victims compensation and assistance account.

(2) When a presentence report is not authorized or requested, the court may receive evidence of the offender's ability to pay and the victim's loss at the time of sentencing.

¶46    In addition to documentation of the information required by § 46-18-242(1), MCA (1997), a district court imposing a sentence of restitution is required to specify the amount, method and time of each payment to the victim pursuant to § 46-18-244(1), MCA (1997). Pritchett, ¶ 14. In doing so, the court must consider the financial resources and future ability of the offender to pay in accordance with § 46-18-244(2), MCA (1997). Pritchett, ¶ 14. Section 46-18-244(2), MCA (1997), provides:

In determining the amount, method, and time of each payment, the court shall consider the financial resources and future ability of the offender to pay. The court shall provide for payment to a victim of the full amount of the pecuniary loss caused by the offense. The offender may assert any defense that the offender could raise in a civil action for the loss sought to be compensated by the restitution order.

¶47    We held in Pritchett that the failure of the PSI to document the victim's pecuniary loss, the

defendant's financial resources and his future ability to pay restitution renders a district court's restitution sentence illegal. Pritchett, ¶ 13. Here, as the State concedes, the PSI did not document the victim's pecuniary loss or Muhammad's future ability to pay restitution. In addition, the District Court did not consider Muhammad's future ability to pay restitution since evidence of such was not presented to the District Court. Accordingly, we hold that the District Court illegally sentenced Muhammad to pay restitution in its June 7, 2000, Order in violation of the procedural requirements stated in § 46-18-242, MCA (1997), and § 46-18-244(2), MCA (1997). Consequently, the restitution condition imposed in the District Court's June 7, 2000, Order is hereby vacated.

## ISSUE 4

¶48    Whether the District Court had statutory authority to restrict future interstate compact agreements entered into by Muhammad?

¶49    Muhammad contends the District Court lacked statutory authority to require that interstate compacts be approved by Montana treatment providers, Dr. Scolatti or Ron Silvers, prior to approval by the District Court. Muhammad argues the District Court has no authority to approve or to place restrictions on interstate compact agreements, as § 46-23-1004(8), MCA, provides it is the duty of the DOC to administer interstate compact agreements.

¶50    The State concedes the District Court lacks authority to approve interstate compacts. However, the State asserts the District Court has authority to condition a probationer's sentence in such a way as to require sexual offender treatment by a MSOTA program or an equivalent program. Thus, the State points out the District Court's condition should have stated that "Muhammad must receive sexual offender treatment by a MSOTA program, or an equivalent program should his probation supervision be transferred to another state."

¶51    Section 46-23-1004(8), MCA (1997), provides that it is the duty of the DOC to administer interstate compacts for the supervision of probationers. Therefore, we conclude that the District Court did not have statutory authority to approve or restrict interstate compact agreements entered into by Muhammad. However, we note that on remand the District Court is not precluded from requiring that Muhammad complete a program equivalent to a MSOTA program if his probation supervision is transferred to another state. Consequently, we vacate the condition imposed in the District Court's June 7, 2000, Order to the extent that Montana treatment providers and the District Court are required to approve an interstate compact agreement entered into by Muhammad in violation of § 46-23-1004(8), MCA (1997). We remand the remaining portion of the condition to the District Court for modification.

¶52    Affirmed in part, vacated in part and remanded for proceedings consistent with this Opinion.

/S/JIM REGNIER

We Concur:

/S/ TERRY N. TRIEWEILER
/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

Justice Jim Rice concurring in part and dissenting in part.

¶53    I concur with the holding herein that the Court is without jurisdiction to entertain Muhammad's challenge of the conditions imposed in his sentence of May 28, 1999, because of his failure to file a timely appeal therefrom, and that the District Court's revocation of that sentence must be affirmed. Regarding the sentence imposed on June 7, 2000, I concur with the Court's holding on issue four, and with much of the rationale set forth in the discussion of issues one, two and three.   However, because I disagree with the Court's ultimate disposition of those issues, I respectfully dissent from that portion of the opinion.

Issue 1:  Banishment condition

¶54    The Court invalidates the banishment condition imposed herein, holding that the condition is not reasonably related to the statutory goals of rehabilitation because the banishment ordered here "is broader than necessary to protect the victim" and "unduly severe."  ¶ 28.  I understand the Court's holding to be that banishment conditions are not invalid per se, but that the particular condition imposed in this case was overly broad.

¶55    Such a conclusion is strongly supported by the nation's jurisprudence.  Although the Court cites to three cases in support of its statement that "[s]ome jurisdictions have invalidated banishment conditions based upon a public policy rationale," it is important to note that all three of those cases (Baum, Rutherford and Charlton) addressed banishment from an entire state, as opposed to a county or limited geographic area that is more likely to be rationally related to a legitimate sentencing purpose.  Further, none of the other cases cited by the Court in which banishment from smaller geographical areas was invalidated (Jones, Franklin, Ferre, and Johnson), declared banishment to be invalid per se.  In fact, courts in all of those jurisdictions have upheld banishment when it was deemed to be appropriately related to the circumstances.

¶56    Interpreting our statute to allow such conditions fulfills an important public policy.  Instances where a vindictive defendant stalks and intimidates another person, and sometimes that person's family, friends, fellow employees and other associates, have been addressed by the enactment of anti-stalking legislation.  Cases abound where such defendants fail to abide by restraining orders.  Police have insufficient resources to maintain 24-hour surveillance of such individuals.  In such cases, banishment power in the courts provides additional security for victims and assistance to law enforcement in their task of protecting victims.

¶57    The goal of protecting the victim was present in this case.  The record reflects that protection of the victim was a consideration in the District Court's decision, and I would specifically hold that the victim's protection can justify a properly imposed banishment condition under the broad authority granted to sentencing courts in § 46-18-202, MCA.  However, because the District Court did not enter sufficient findings to establish that banishment from the entirety of Cascade County is necessary to

protect the victim herein, as opposed to the City of Great Falls proper, or other smaller area, I would remand this matter to the District Court for re-sentencing and not simply invalidate the condition. See Ferre, 734 P.2d at 889-90.

## Issue 2: Sign condition

¶58    The Court finds that the sign condition imposed in Muhammad's June 7, 2000, sentence is inconsistent with the sentencing objectives expressed in § 46-18-202, MCA, and invalidates the condition. Although I agree with this conclusion, I disagree with the rationale used by the Court.

¶59    Section 46-18-202, MCA, grants broad general sentencing authority to the courts. The Court's determination that the sign condition conflicts with that statute is a subjective determination that appears to conflict with the plenary power granted by the statute to impose "any other limitation" upon the offender reasonably related to rehabilitation goals and protection of the victim. The sign condition is arguably related to such purposes. Because I see no direct conflict between the sign condition and the statute, I would address this issue on the constitutional grounds raised by Muhammad.

¶60    The inherent repugnance of such a condition to the right to privacy and human dignity places a heavy burden upon the State to justify it as a legitimate rehabilitation tool under the statute. Further, the potential disruption to a neighborhood caused by the requirement of a sign would substantially depreciate any benefits to be gained from the condition as a protection device. If a defendant is too dangerous to reside in normal fashion within a community, a district court must either impose incarceration or other intensive supervision requirements. Releasing an offender to live in a community, but at the same time making him or her a public spectacle, is an affront to our constitutional principles.

## Issue 3: Restitution

¶61    I concur that the restitution condition was improperly imposed. However, I dissent from the Court's failure to remand the matter for re-sentencing, as we did under similar circumstances in Pritchett; State v. Hilgers, 1999 MT 284, 297 Mont. 23, 989 P.2d 866; and State v. Brown (1994), 263 Mont. 223, 867 P.2d 1098. There is a victim in this case who may very well qualify for payment of restitution if the proper findings are made. The potential restitution issue referenced in Footnote 3 of the Horton opinion has not yet been addressed or resolved, and therefore, should not stand in the way of ordering restitution if warranted.

¶62    The Court further reasons that remand for consideration of the restitution issue is not justified here on the grounds of "avoidance of wasting judicial resources and pursuant to preserving judicial economy." ¶ 43. However, the Court is remanding this case for further proceedings under Issue 4, and it would be an efficacious use of judicial resources to address all of the sentencing issues here at the same time, including banishment, restitution and requirements for transfer of supervision. I would so order.

/S/ Jim Rice