No. 02-667

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 311

STATE OF MONTANA,

       Plaintiff and Respondent,

   v.

SHANE GRINDHEIM,

       Defendant and Appellant.


APPEAL FROM:    District Court of the Tenth Judicial District,
                      In and For the County of Fergus, Cause No. DC 2001-41,
                      Honorable E. Wayne Phillips, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Torger S. Oaas, Attorney at Law, Lewistown, Montana

       For Respondent:

           Honorable Mike McGrath, Attorney General; Pamela P. Collins,
           Assistant Attorney General, Helena, Montana

           Thomas Meissner, County Attorney; Robert L. Deschamps, Special
           Deputy County Attorney, Lewistown, Montana


                      Submitted on Briefs:  February 10, 2004

                                Decided:   November 9,
           2004

Filed:

                             Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Shane Grindheim (Grindheim) appeals from the jury verdict rendered in the Tenth Judicial District Court, Fergus County, finding him guilty of sexual intercourse without consent under § 45-5-503, MCA.  We affirm.

¶2     Grindheim raises the following issues on appeal:

¶3     Did the District Court abuse its discretion in denying Grindheim's motion for directed verdict on the issue of penetration?

¶4     Did the District Court abuse its discretion by requiring Grindheim to choose between a continuance to prepare for a State witness or losing the opportunity for his expert to testify?

¶5     Did the District Court abuse its discretion by denying Grindheim's request to instruct the jury on a lesser included offense of endangering the welfare of children?

¶6     Did the District Court abuse its discretion in excusing a juror after the case had been submitted to the jury?

¶7     Did the District Court err in imposing sentence?

### FACTUAL AND PROCEDURAL BACKGROUND

¶8     On August 24, 2001, E.S., who was 12 years old, traveled to Lewistown, Montana, and spent the evening at the home of Josh Poser (Poser) where her cousin Phil Fry (Fry) was also staying.  Courtney Trafton (Trafton), who was likewise spending the night at Poser's home, brought blankets and a sleeping bag for E.S. to use as bedding.  When Trafton and Fry went to bed, E.S. laid down on a couch in the living room.

¶9     Meanwhile, Grindheim, Sam Knox (Knox), and Rocky Stonehocker (Stonehocker), all from Denton, Montana, also decided to spend the evening at Poser's home because

2

Grindheim had been living and paying rent there that summer and was in the process of moving out. Grindheim was 20 years old. That evening, all three drank alcohol and visited friends in the Lewistown area.

¶10 At one o'clock in the morning, Grindheim, Knox, and Stonehocker stopped by Poser's home. They were carrying beer and drinking, and left again shortly thereafter. Around four o'clock in the morning, the three men came back to Poser's house and were intoxicated. Knox went to bed on the living room floor and Stonehocker decided to sleep in the yard. Grindheim told E.S. he had a "claim" on the couch because he used to live there. Grindheim and E.S. ended up sharing the couch, each lying on opposite sides of the couch.

¶11 E.S. testified that over the next 30 minutes, Grindheim continually asked her to come under the covers, but that she had replied, "No." E.S. explained that Grindheim then grabbed her hand and tried to lure her under the covers without success, and that he began asking her to give him a "blow job." E.S. testified that at this point, Grindheim's pants were off and that she saw his erect penis. E.S. stated that she told Grindheim she did not want to do it, but that Grindheim continued to force her head down on his penis to perform oral sex. E.S. testified that as she turned her head, her cheek and then her mouth went on Grindheim's penis, which she stated was in her mouth about one-half of a second. E.S. pulled her head up, but Grindheim pushed it back down again, wherein E.S.'s mouth was on his penis a second time for less than one-half of a second. E.S. then pushed Grindheim away, ran into the bathroom, locked the door and stayed there for approximately one-half hour. When E.S.

3

came out of the bathroom, Grindheim was no longer in the house, having gone out to the yard to sleep.

¶12 On the morning of August 25, 2001, E.S. left Poser's house and went to her aunt's home in Lewistown, where she saw her parents that afternoon. E.S. did not speak of the incident with Grindheim because she felt scared and did not want anyone to know. The following day, E.S. returned home to Denton and E.S.'s older sister, S.S., told their mother that she heard Grindheim state at a bachelor party they both attended in Lewistown the night before that E.S. gave "good head." E.S.'s mother contacted Officer Rick Vaughn (Vaughn) at the Fergus County Sheriff's Department, and insisted that E.S. speak to him about the incident.

¶13 Subsequently, Dave Sanders (Sanders), a captain with the Lewistown Police Department, advised Vaughn that he would handle the matter and thereafter asked Grindheim to come to the Fergus County Complex to discuss the incident. After Sanders read Grindheim his *Miranda* rights, Grindheim signed a waiver form and Sanders conducted a videotaped interview of Grindheim, wherein he explained that his penis was in E.S.'s mouth twice, for about thirty seconds each time.

¶14 On September 5, 2001, Grindheim was charged with sexual intercourse without consent, a felony, in violation of § 45-5-503, MCA. An Omnibus Hearing was held on February 4, 2002, and a trial by jury commenced on June 10, 2002. On Wednesday, June 12, 2002, the jury found Grindheim guilty. The District Court sentenced Grindheim on

4

September 6, 2002, deferring imposition of sentence for six years, subject to a six-month incarceration in the county jail and other conditions.

¶15 On September 10, 2002, Grindheim filed a notice of appeal. On September 16, 2002, the District Court granted Grindheim's motion for stay of execution of his sentence pending appeal.

## STANDARD OF REVIEW

¶16 We review evidence in a criminal trial in a light most favorable to the prosecution to determine whether the trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *State v. Martin*, 2001 MT 83, ¶ 17, 305 Mont. 123, ¶ 17, 23 P.3d 216, ¶ 17. Furthermore, we will review a district court's denial of a motion for directed verdict in a criminal case for an abuse of discretion. *State v. McMahon*, 2003 MT 363, ¶ 11, 319 Mont. 77, ¶ 11, 81 P.3d 508, ¶ 11. If sufficient evidence exists for the trier of fact to find the elements of the charged offense beyond a reasonable doubt, no abuse of discretion results. *State v. Landis*, 2002 MT 45, ¶ 23, 308 Mont. 354, ¶ 23, 43 P.3d 298, ¶ 23. Moreover, an abuse of discretion occurs when a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason. *Bailey v. Beartooth Communs. Co.,* 2004 MT 128, ¶ 10, 321 Mont. 305, ¶ 10, 92 P.3d 1, ¶ 10.

¶17 This Court reviews jury instructions in criminal cases to "determine whether such instructions, as a whole, fully and fairly instruct the jury on the applicable law" and whether the district court abused its discretion. *State v. Bowman*, 2004 MT 119, ¶ 49, 321 Mont. 176, ¶ 49, 89 P.3d 986, ¶ 49 (citing *State v. German*, 2001 MT 156, ¶ 10, 306 Mont. 92, ¶ 10, 30

5

P.3d 360, ¶ 10). The district courts have broad discretion in formulating jury instructions. *German*, ¶ 10. This Court will not reverse the trial court unless the jury instructions prejudicially affect the defendant's substantial rights. *State v. McCaslin*, 2004 MT 212, ¶ 27, 322 Mont. 350, ¶ 27, 96 P.3d 722, ¶ 27.

¶18 The trial court has discretion to remove a juror and seat an alternate juror whenever the facts show the juror's ability to perform his duties is impaired. *State v. Pease* (1986), 222 Mont. 455, 469, 724 P.2d 153, 162-63. The reviewing court will not disturb the ruling unless the defendant shows bias or prejudice. *Pease*, 222 Mont. at 470-71, 724 P.2d at 163.

¶19 This Court reviews the imposition of a sentence in a criminal case solely for legality, determining whether the sentence is within the parameters of the sentencing statutes. *State v. J.C.*, 2004 MT 75, ¶ 36, 320 Mont. 411, ¶ 36, 87 P.3d 501, ¶ 36. In reviewing a district court's findings of fact as to the amount of restitution, our standard of review is whether those findings are clearly erroneous. *State v. Setters,* 2001 MT 101, ¶ 16, 305 Mont. 253, ¶ 16, 25 P.3d 893, ¶ 16.

## DISCUSSION

¶20 **Did the District Court abuse its discretion in denying Grindheim's motion for directed verdict on the issue of penetration?**

¶21 Grindheim contends that the District Court erred when it denied his motion for directed verdict because that State introduced insufficient evidence of penetration. Grindheim explains that "sexual intercourse" requires proof of penetration under § 45-2-

101(67)(a), MCA,[1] and that E.S.'s testimony regarding this element was ambiguous.  To illustrate the ambiguity, Grindheim points to E.S.'s testimony whereby she explained that her mouth was "on" Grindheim's penis but that she also, in response to a leading question, testified Grindheim's penis was "in" her mouth.  Grindheim additionally notes that there was no testimony that E.S.'s mouth was open at any time during the encounter.

¶22    The State responds by first noting that § 45-2-101(67)(b), MCA, provides that, for purposes of the act of sexual intercourse, "any penetration, however slight, is sufficient." Additionally, the State argues there was no ambiguity as to whether there was penetration because, in addition to E.S.'s testimony that Grindheim's penis was "on" and "in" her mouth twice briefly, Grindheim admitted in his statement to Sanders that his penis was in E.S.'s mouth twice, each time for about thirty seconds, and evidence was presented that Grindheim stated to S.S. that E.S. "did some mean head."  In light of this evidence, the State contends that the District Court did not abuse its discretion when it denied Grindheim's motion for a directed verdict.

¶23    This Court reviews a district court's denial of a motion for directed verdict in a criminal case for an abuse of discretion.  *McMahon,* ¶ 11.  Here, the District Court denied Grindheim's motion for a directed verdict based on the evidence offered by the State, concluding there was no ambiguity in E.S.'s testimony and further, that her testimony was supported by Grindheim's videotaped confession, wherein he acknowledged that his penis was in E.S.'s mouth twice for approximately thirty seconds each time.  Additionally, noting

_____

[1] "'Sexual intercourse' means penetration of the . . . mouth of one person by the penis of another person . . . ."

7

that § 45-2-101(67)(b), MCA, defines penetration as consisting of "any penetration, however slight," the District Court determined the evidence presented was sufficient to satisfy the statutory requirements for penetration. When viewing the evidence in the light most favorable to the State, we conclude that sufficient evidence existed for the jury to find penetration occurred and that the District Court did not abuse its discretion in denying Grindheim's motion for directed verdict.

¶24 In his Reply Brief, Grindheim responds to the State's argument by claiming that his confession was not sufficient, by itself, to support the conviction if the State had not first offered sufficient evidence to prove the elements of the crime. As authority, Grindheim points to cases from foreign jurisdictions which support his contention that a confession, by itself, is insufficient evidence to sustain a conviction. However, we have held that, pursuant to § 26-1-301, MCA, the testimony of one witness is sufficient for the proof of any fact. *See Porter v. State,* 2002 MT 319, ¶ 22, 313 Mont. 149, ¶ 22, 60 P.3d 951, ¶ 22. Therefore, because we concur with the District Court that E.S.'s testimony was sufficient to sustain a finding of penetration, it is unnecessary to address Grindheim's argument that his confession, standing alone, was insufficient to support the conviction.

¶25 **Did the District Court abuse its discretion by requiring Grindheim to choose between a continuance to prepare for a State witness or losing the opportunity for his expert to testify?**

¶26 On February 23, 2002, one month after issuance of the Omnibus Order but four months before trial, the State sent Grindheim's counsel a copy of a statement given by Valerie Turk (Turk) to the Fergus County Sheriff's Department in which she stated that she

8

had overheard Grindheim, in a bragging fashion, say that E.S. had oral sex with him. In addition, the State attached a cover letter to the statement informing Grindheim's counsel that Turk was a "potential witness" at trial.

¶27 On June 5, 2002, five days before trial, the State filed a motion to add Turk to the witness list because her name had not been listed on the Omnibus Order. The following day, Grindheim's counsel filed an objection to the State's motion to amend the witness list, and the matter was discussed during a pre-trial hearing that same day. On the first day of trial, the State submitted a supplemental affidavit to the District Court concerning its addition of Turk as a witness. Grindheim's counsel responded that the addition would be prejudicial and that he would ask for a continuance if the witness was allowed to testify.

¶28 On the morning of June 11, 2002, the issue was discussed in Chambers, wherein the District Court asked Mr. Oaas, Grindheim's counsel, if a one-day continuance to prepare for Turk's testimony would be sufficient. Mr. Oaas responded as follows:

> A day is probably enough for me to do what I need to do. I mean, I can't really say that I would need more time . . . . I certainly know a lot of people at places where she worked and knew her, so if I need to find the kind of witnesses that I would have lined up ahead of time, I can't say that a day would be unfair.

Thus, the District Court stated that if the State called Turk as the witness and the defense objected, it would grant the defense a one-day continuance. The District Court concluded that a one-day continuance would be sufficient to cure any prejudice because "Ms. Turk's statement was made known . . . [it] wasn't a surprise. The fact that she is a witness to this matter was not a surprise."

9

¶29 Later, the State announced that it was calling Turk as a witness. However, on that day, Grindheim's out-of-state expert witness, Dr. Ofshe, was also scheduled to testify, and further, had to depart that evening. This prompted Grindheim's counsel to ask the District Court to allow Dr. Ofshe to testify out of order *before* the granting of the one-day continuance. The State objected, arguing that allowing the defense to call Dr. Ofshe, who was to provide expert testimony regarding the inadequacies of the police interrogation surrounding Grindheim's confession, before the State offered evidence about the confession itself, would cause jury confusion. The District Court agreed and denied the request. Defense counsel, arguing he was faced with a "Hobson's Choice," placed his objection on the record, and proceeded without taking the one-day continuance. The District Court then concluded:

> In terms of clarifying the record regarding the testimony of Ms. Turk, I want the record to be clear and reflect that in Chambers, the Court discussed with counsel this very matter, and the Court made it clear that if [Grindheim] was arguing that there was prejudice to his potential preparation for Ms. Turk's testimony, that the Court would entertain an objection and would then grant a continuance so as to cure that potential prejudice . . . [t]his was scheduled for a three-day trial, and it was clear that there would have been an opportunity on the third day of this trial to have the expert testify. Therefore the Court finds that there was not prejudice to [Grindheim] . . . .

¶30 Grindheim argues that the District Court improperly required him to choose between either accepting a one-day continuance to prepare for the cross-examination of Turk, or having his expert witness testify and foregoing the one-day continuance. Grindheim asserts the District Court abused its discretion by allowing the State to include Turk as a witness without proper notice, and then by refusing to allow Dr. Ofshe to testify out of order to

10

resolve the conflict between Dr. Ofshe's travel schedule and the timing of the promised continuance.

¶31    The State argues that the District Court properly found that neither Turk, nor the content of her testimony, was a surprise to the defense.  Further, the State notes that Grindheim does not contest the District Court's finding that calling Dr. Ofshe out of order would have caused jury confusion.  Thus, the State contends that neither allowing Turk to testify, nor refusing to allow Dr. Ofshe to be called out or order, was an abuse of discretion, especially given the District Court's requirement that the witnesses were to be available on all three scheduled days of trial.

¶32    "We review a district court's ruling allowing the testimony of a witness to determine whether the district court abused its discretion." *State v. Bailey*, 2004 MT 87, ¶ 11, 320 Mont. 501, ¶ 11, 87 P.3d 1032, ¶ 11 (citing *State v. Hayworth,* 1998 MT 158, ¶ 36, 289 Mont. 433, ¶ 36, 964 P.2d 1, ¶ 36).  The Defendant in *Bailey* was charged with sexual assault upon his two stepdaughters and argued on appeal that the district court abused its discretion when it granted the prosecution's motion to add an expert to its witness list four days before trial. *Bailey*, ¶ 21.  On March 6, 2000, the State informed the Defendant it would be calling the victims' counselor and physicians as expert witnesses at trial. *Bailey*, ¶ 20.  However, on June 20, 2002, four days before trial, the State moved to add a physician, giving the Defendant four days to interview the physician and prepare for cross-examination. *Bailey*, ¶ 20.  The Defendant asserted that the lack of notice regarding the physician was an "unfair surprise" and prejudiced him because he did not have adequate time to prepare for cross-

11

examination, *Bailey*, ¶ 11, and on appeal argued that the district court had abused its discretion in allowing the physician to testify without sufficient pretrial notice. *Bailey*, ¶ 15. We concluded that because the Defendant knew that the State planned to call another physician who intended to testify to findings similar to the physician who was noticed four days before trial, and further, because the Defendant had four days to prepare for cross-examination, "the Defendant failed to establish the district court abused its discretion or that Defendant was thereby prejudiced." *Bailey*, ¶¶ 20-21.

¶33 The situation here is virtually identical. Grindheim was put on notice approximately four months before trial that Turk may be called as a potential witness. As discussed further herein, Grindheim's counsel was also aware that Turk's testimony was identical to the testimony to be offered by a listed witness, S.S. Grindheim had five days before trial, following the State's formal notice, to prepare for Turk's cross-examination. In addition to these five days, the District Court offered to grant Grindheim a one-day continuance to further accommodate his preparation needs. The continuance, which was then declined by Grindheim's counsel, was offered as an accommodation for the State's tardy listing of a witness, but about whom Grindheim was already aware. Moreover, the District Court concluded there was no good cause to depart from the order of the trial[2] because jury confusion could result from Dr. Ofshe testifying out of order and further, he could instead testify on the third day of trial, since both parties were required to have their witnesses available during all three scheduled days of the trial.

---

[2]According to § 46-16-402, MCA, if good cause is shown, the district court has the discretion to depart from the order of the trial as prescribed in § 46-16-402, MCA.

¶34 In light of these facts and our holding in *Bailey*, we conclude that the District Court neither abused its discretion by allowing the State to add Turk as a witness, nor by denying Grindheim's request to call Dr. Ofshe out of order. Grindheim had actual prior notice of Turk, Turk's testimony was cumulative, and Grindheim had five days after formal notice to prepare for cross-examination. The one-day continuance was merely an additional accommodation, the loss of which did not prejudice the defense when it elected to proceed so that Dr. Ofshe could testify on the second day of trial. The District Court's finding that allowing Dr. Ofshe to testify out of order would cause jury confusion is not contested by Grindheim, and the District Court therefore properly denied that request.

¶35 Even if we were to conclude that the District Court abused its discretion, the error would not require reversal because it was harmless. Turk's testimony was cumulative, and had the effect of corroborating S.S.'s testimony. Turk had overheard Grindheim tell S.S. that "your sister gives mean head" at the party they all had attended, making her testimony about Grindheim's statement virtually identical to S.S.'s. Grindheim's counsel admitted that Turk's testimony was not "essential to the State's case [because] . . . she is simply a corroborating witness to something that S.S. is going to testify to . . . ."

¶36 According to *State v. Van Kirk*, 2001 MT 184, 306 Mont. 215, 32 P.3d 735, a "trial error is not presumptively prejudicial and is subject to review under the harmless error statute, § 46-20-701(1), MCA," which provides that a cause may not be reversed by reason of any error committed by the trial court against the convicted person unless the record shows that the error was prejudicial. *Van Kirk*, ¶ 40. The test for prejudicial error is

13

"whether there is a reasonable possibility that the inadmissible evidence might have contributed to a conviction" pursuant to the cumulative evidence standard, *Van Kirk*, ¶ 42, which requires that the State direct the court to admissible evidence "that proved the same facts as the tainted evidence." *Van Kirk,* ¶ 44. The admission of Turk's testimony was cumulative because she was simply testifying about Grindheim's statement to S.S., about which S.S. also testified at trial. Therefore, no prejudice resulted from the testimony, and any error in allowing the testimony was harmless.

¶37 **Did the District Court abuse its discretion by denying Grindheim's request to instruct the jury on a lesser included offense of endangering the welfare of children?**

¶38 Although Grindheim challenges the District Court's denial of his request for an instruction, he also challenges this Court's jurisprudence on this issue by claiming the test for lesser included offenses, as set forth in *State v. Beavers*, 1999 MT 260, 296 Mont. 340, 987 P.2d 371, entirely abrogates the lesser-included offense doctrine in Montana. Grindheim argues that because all criminal statutes have different elements, it is impossible, under *Beavers*, for there to be a lesser-included offense. Grindheim argues the District Court, in applying the law, improperly focused on the "elements" of the offense rather than comparing the "facts" of each offense under § 46-1-202(9)(a), MCA, which provides that an "included offense . . . is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Grindheim argues that, by comparing the elements, and not the facts, the District Court erred as a matter of law.

¶39 The State argues that under § 46-1-202(9)(a), MCA, the statute defining lesser-included offenses, Grindheim must establish that the crime of endangering the welfare of

14

children requires the same or less than all the elements required to establish the crime of sexual intercourse without consent. The State explains that the offense of "endangering the welfare of children," as defined in § 45-5-622(2)(b)(ii), MCA requires proof of additional elements not included within the offense of sexual intercourse without consent, including that the defendant be at least eighteen years of age, and assisting or encouraging a child under the age of sixteen[3] to engage in sexual conduct. The State asserts that because the elements of these offenses are different, endangering the welfare of children cannot be deemed a lesser-included offense.

¶40     As the State notes, this Court has previously considered the argument made by Grindheim herein and has concluded "that the term 'facts,' refers to the statutory elements of the offenses, not the individual facts of the case." *State v. Beavers*, ¶ 30. We decline to reconsider that ruling. Thus, because the elements of endangering the welfare of children and sexual intercourse without consent are different, the former cannot be a lesser included offense because that offense requires proof of the aforementioned additional elements. Thus, the District Court did not err as a matter of law in analyzing the elements of the offenses. Additionally, because we conclude that the elements of the offenses at issue clearly differ,

---

[3]Section 45-5-503, MCA, provides: "Sexual intercourse without consent" includes that the person: (1) knowingly, (2) has sexual intercourse, (3) without consent, (4) with another person.

Section 45-5-622(2)(b)(ii), MCA, provides that: "Endangering the welfare of children" includes that (1) a person eighteen years of age or older, (2) knowingly, (3) contributes to the delinquency of a child less than sixteen years of age, (4) by assisting, promoting, or encouraging the child, (5) to engages in sexual conduct.

15

we decline to take up Grindheim's broad assertion that our holding in *Beavers* essentially eliminates lesser-included offenses in all instances.

¶41    Even were we to accept Grindheim's assertion that the offense of endangerment of children was a lesser-included offense, the evidence in this trial would not have supported Grindheim's conviction of that offense, but rather, would instead have supported Grindheim's acquittal. Grindheim's evidence and theory was that some "unknown person" unzipped his sleeping bag and began "messing around" with him in a sexual manner. After he realized what was going on, he asserted that he jumped off the couch, took his sleeping bag, and went out to sleep in the yard. Thus, Grindheim's evidence and theory does not offer proof of "assisting, promoting or encouraging" a child to engage in sexual conduct pursuant to § 45-5-622(2)(b)(ii), MCA. Therefore, we conclude the District Court did not abuse its discretion in denying Grindheim's requested lesser-included offense instruction.

¶42    **Did the District Court abuse its discretion in excusing a juror after the case had been submitted to the jury?**

¶43    Following submission of the case to the jury Juror Ann McMaster (McMaster) asked to meet with the District Court. McMaster told the District Court and the parties that she could not perform the duty of a juror, stating "I can't do this. I shouldn't be here . . . I don't–I have never done this before, and I am never going to do it again. I can't do it. I don't want any part of it." The District Court thereafter discharged McMaster and replaced her with an alternate juror, and Grindheim objected on the grounds of timeliness–that the law did not permit a juror's substitution after the case was submitted to the jury.

16

¶44 Grindheim contends that McMaster, even though she became emotional during closing arguments, nonetheless indicated to the District Court that she could finish her job and did not want to be excused if it would cause a mistrial, and thus, the District Court erred in discharging her. Section 46-16-118, MCA, provides that "alternate jurors . . . shall replace jurors who, prior to the time the jury arrives at its verdict become unable or disqualified to perform their duties." Grindheim claims that McMaster, by her own words, did not fit either of these categories and therefore the District Court abused its discretion in discharging her.

¶45 The State responds by citing McMaster's testimony that she did not want to take part in the deliberations, that she was "not a strong emotional person" and was "falling apart." Additionally, the State argues that McMaster was properly discharged under § 46-16-118(3), MCA, which provides, in pertinent part, that "alternate jurors, in the order in which they are called, shall replace jurors who, *prior to the time the jury arrives at its verdict*, become unable or disqualified to perform their duties." (Italics added.)

¶46 As the State correctly notes, the argument made by Grindheim on appeal is different than the basis for his objection in the District Court. There, he argued that the statute would not permit a substitution after the case was submitted to the jury–not that the juror's reasons were insufficient for her discharge. A party cannot change theories on appeal. *Unified Indus., Inc. v. Easley,* 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15. Therefore, we will not consider Grindheim's argument that there was insufficient reason to substitute McMaster.

17

¶47 We have stated that, under § 46-16-118(3), MCA, "substitution of an alternate for an original juror who becomes . . . unable to perform [jury] duties, is permitted at any time prior to the reaching of a verdict." *Pease,* 222 Mont. at 470, 724 P.2d at 162. Thus, we conclude that McMaster was timely substituted, and the District Court did not abuse its discretion in doing so.

¶48 **Did the District Court err in imposing sentence?**

¶49 Grindheim claims his sentence must be vacated and remanded for re-sentencing because the District Court erred by requiring that, after serving his six-month jail term, he complete 2,000 hours of community service and pay fines and restitution totaling approximately $6,496.60. Grindheim claims that the combination of these conditions are unreasonable, impossible to perform, and act inappropriately as punishment instead of rehabilitation. Grindheim specifically argues that the 2,000 hours of community service is *per se* unreasonable because the alleged crime occurred against a single victim and not against the community itself.

¶50 The State responds that Grindheim's sentence is legal because it falls within the statutory parameters of the offense and further asserts that the 2,000 hour community service order is proper under § 46-18-201(4)(j), MCA, which specifically provides that community service is a reasonable restriction that the sentencing court may impose when deferring imposition of sentence.

¶51 This Court has clearly held that a sentencing order must be reasonably related to the objectives of rehabilitation and the protection of the victim and society. *State v. Kroll*, 2004

MT 203, ¶ 29, 322 Mont. 294, ¶ 29, 95 P.3d 717, ¶ 29. For the order to be reasonably related to these objectives, there must be some connection or relationship between the underlying offense and the sentencing limitation imposed. *Kroll*, ¶ 29.

¶52 In its Sentencing Order, the District Court found that the crime had resulted in a "tear in this rural area's social fabric from [Grindheim's] misjudgment . . . [i]n short, society has suffered harm here as well." The District Court concluded it was important that Grindheim demonstrate goodwill to the members of the community who had supported him by writing favorable letters to the court and therefore ordered Grindheim to perform continual service at a single facility. It also instructed Grindheim that "the community service officer" would determine "how" and "within whom" Grindheim was to complete his community service.

¶53 Additionally, the District Court found that, while punishment was appropriate, rehabilitation was "highly appropriate" since Grindheim was a first time offender and enjoyed a reputation for "hard work, exceptional community diligence, and a general integrity of morals and standards." Because of these factors, the District Court decided it was more appropriate to impose county jail time and community service hours than incarceration in the state prison.

¶54 Pursuant to § 46-18-201(1)(a)(ii), MCA, "a sentencing judge may defer imposition of sentence . . . not exceeding six years for a felony if a financial obligation is imposed as a condition of sentence." Section § 46-18-201(4), MCA, directs that a judge "when deferring imposition of sentence . . . may impose upon the offender any reasonable restrictions or conditions during the period of the deferred imposition." A list of restrictions defined as

being "reasonable" under § 46-18-201(4), MCA, include factors such as incarceration in a detention center, conditions for probation, payment of fines and costs, and community service. Because the imposition of the conditions and community service are within the parameters of the sentencing statute and are reasonably related to the circumstances of the offense, we conclude the District Court did not err in imposing sentence.

¶55 Grindheim also argues that the District Court's restitution order improperly required him to pay for "undefined amounts" of E.S.'s future counseling costs, which runs afoul of this Court's holding in *State v. Muhammad*, 2002 MT 47, 309 Mont. 1, 43 P.3d 318. In *Muhammad*, we vacated a sentencing order because the condition imposed by the trial court was not reasonably related to the goals of rehabilitation and was broader than necessary to protect the victim. *Muhammad*, ¶ 28. However, *Muhammad* does not prohibit the imposition of costs reasonably incurred by a victim as a result of a crime. On this point, we held in *State v. Benoit*, 2002 MT 166, 310 Mont. 449, 51 P.3d 495, that "the losses sustained from [the defendant's] admitted acts [] are recoverable, even though the actual losses may be uncertain." *Benoit*, ¶ 29. We concluded that losses are recoverable when calculated by use of "reasonable methods based on the best evidence available under the circumstances." *Benoit*, ¶ 29.

¶56 E.S.'s therapist, Maggie Moffat, testified that E.S. may need counseling up into her mid-twenties. However, the District Court ordered Grindheim to pay future counseling costs only for the six-year period of his deferment. Because the District Court heard extensive testimony regarding E.S.'s long-term counseling needs and Grindheim did not offer evidence

20

that contradicted the testimony, we conclude that the restitution calculations were reasonable and that the District Court did not err in imposing restitution for E.S.'s future counseling needs.

¶57 Finally, Grindheim argues that the District Court's requirements regarding payment of restitution are inconsistent. However, Grindheim fails to set forth exactly how such payments are inconsistent. We have held that we will decline to address an issue when the appellant fails to cite supporting authority. *State v. Ellenburg*, 2000 MT 232, ¶ 49, 301 Mont. 289, ¶ 49, 8 P.3d 801, ¶ 49. Thus, we decline to address this issue.

¶58 Affirmed.

/S/ JIM RICE

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JIM REGNIER