DA 08-0223

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 222

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DONNA LYNN O'CONNOR, a/k/a DONNA WITKOWSKI,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of Richland, Cause No. DC 06-27
Honorable Katherine M. Irigoin, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Jim Wheelis, Chief Appellate Defender; Roberta R. Zenker, Assistant
Appellate Defender; Helena, Montana

      For Appellee:

            Hon. Steve Bullock, Montana Attorney General; C. Mark Fowler,
Assistant Attorney General; Helena, Montana

            Mike Weber, Richland County Attorney; Sidney, Montana

Submitted on Briefs:  January 7, 2009

Decided:  June 30, 2009

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Donna Lynn O'Connor pled *nolo contendre* to felony theft. She appeals her sentence, challenging the imposition of restitution. We affirm.

¶2 We address the following issue on appeal:

¶3 Did the District Court err when it ordered O'Connor to pay restitution?

## BACKGROUND

¶4 Bob and Vicki Danielson, owners of the True Value Hardware store in Sidney, Montana, notified police in August of 2005 that they suspected an employee was taking money from one of the store's tills. The Danielsons noticed that the number of customer returns, according to receipts prepared by the cashiers, had increased unexpectedly. In addition, contrary to store policy requiring customers to sign the back of the receipt for a merchandise return, a number of the receipts did not contain a customer signature or reflected only a first name. Law enforcement installed a video camera and filmed all of the cashiers using the till at which the highest volume of questionable returns had been processed. The video footage showed O'Connor printing receipts when there were no customers present, signing a name other than her own on the back of the receipt, printing an employee number other than her own on the receipt, and withdrawing cash from the till. The Danielsons confronted O'Connor and she admitted to falsifying receipts and taking money.

¶5 O'Connor and the State entered a Plea and Sentence Recommendation Agreement, wherein the State agreed to recommend that she be sentenced to ten years with the

Department of Corrections, with all but three years suspended, and O'Connor agreed to plead *nolo contendre* to the charge and pay restitution. O'Connor also reserved the right to contest the amount of restitution. Pursuant to the Agreement, O'Connor pled *nolo contendre* to the charge, and the District Court sentenced her to ten years, with all but three years suspended.

¶6 The District Court held a separate hearing to determine the amount of restitution O'Connor would owe. Officer Raffaell, who prepared the pre-sentence investigation report, and Officer Burnison, who investigated the crime, testified at the hearing. Through their testimony, the State presented evidence showing that the unusual returns began occurring three months after O'Connor started working at the store, and ceased upon her termination. Burnison told the court that he analyzed each questionable receipt provided to him by the Danielsons, and omitted any returns processed while O'Connor was not working. He testified that he inquired of the Danielsons and the other employees about whether they had processed any of the suspicious returns. Ultimately, Burnison determined that a loss of $14,627 could be attributed to O'Connor's scheme. The State also presented testimony indicating that Sedgwick Claims Insurance Company had reimbursed the Danielsons in the amount of $15,601, according to a letter received from the company. Burnison attributed the difference between the amount paid by the insurance company and his own calculations to returns he had determined were processed while O'Connor was not working. According to testimony at the hearing, neither the Danielsons nor the insurance company requested payment of restitution.

3

¶7 The court determined the amount of restitution to be paid by O'Connor was $13,627. O'Connor appeals.

## STANDARD OF REVIEW

¶8 We review a criminal sentence for illegality. *State v. Oie*, 2007 MT 328, ¶ 8, 340 Mont. 205, 174 P.3d 937. We review a court's findings of fact for clear error. *State v. Honey*, 2005 MT 107, ¶ 13, 327 Mont. 49, 112 P.3d 983. A finding is clearly erroneous if it is not supported by substantial evidence, the district court misinterpreted the evidence, or if we determine a mistake has been made upon review of the record. *Honey*, ¶ 13.

## DISCUSSION

¶9 O'Connor argues the District Court made several errors in its order determining restitution. First, she claims restitution is not warranted at all because the Danielsons were made whole by their insurance company, and the company did not demonstrate a right of subrogation, file an affidavit as required under § 46-18-242(1)(b), MCA, or otherwise request restitution. O'Connor argues the State does not have standing to assert a right of subrogation on behalf of the insurer. Additionally, she argues that the evidence relied upon by the court to set the restitution amount was speculative and contradictory, and therefore fell short under the preponderance of evidence standard.

¶10 The State argues that the District Court did not err in imposing restitution upon O'Connor because substantial evidence supports the court's decision. The State asks that

we decline to address the bulk of O'Connor's claims because she did not preserve those matters for appeal by objecting when the District Court rendered her sentence.

¶11 Generally, this Court will not review matters raised for the first time on appeal absent an objection at the trial court level. *State v. Walker*, 2007 MT 205, ¶ 13, 338 Mont. 529, 167 P.3d 879. We will review a sentence imposed in a criminal case, despite a defendant's failure to object at the time of sentencing, if it is alleged that such sentence is illegal. *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979). However, if a sentence falls within statutory parameters, a sentencing court's failure to abide by a statutory requirement may only give rise to an objectionable sentence, not necessarily an illegal one which would invoke the *Lenihan* exception. *State v. Kotwicki*, 2007 MT 17, ¶ 13, 335 Mont. 344, 151 P.3d 892. Similarly, we have refused to invoke the *Lenihan* rule when a defendant participated or actively acquiesced in the imposition of a condition of his sentence. *State v. Micklon*, 2003 MT 45, 314 Mont. 291, 65 P.3d 559.

¶12 O'Connor agreed in her Plea and Sentence Recommendation Agreement to pay restitution in an amount to be decided by the District Court. In response to a question from the probation officer conducting the pre-sentence investigation, on what the court should do in her case, she stated, "I have to pay restitution." At the restitution hearing, O'Connor did not object to payment of restitution or argue that the victims had not demonstrated a right to restitution. She argued, not about whether she owed restitution, but how much she owed. As her attorney stated in his closing comments, "the real issue in this case is the amount of restitution." He also stated several times that O'Connor

5

intended to abide by the Agreement and simply asked the court to limit the amount of restitution.

¶13 Accordingly, we decline to address those issues O'Connor raises for the first time on appeal, including whether restitution was warranted, whether the insurance company demonstrated a right of subrogation or filed an affidavit, or whether the State had standing to assert a right of subrogation on behalf of the insurer, as those issues were not preserved for appeal. We will consider the remaining issue, whether the amount of restitution was supported by credible evidence.

¶14 We have held that restitution may be ordered for losses caused by the defendant, "even though the actual losses may be uncertain, if the losses were calculated by use of reasonable methods based on the best evidence available under the circumstances." *State v. Benoit*, 2002 MT 166, ¶ 29, 310 Mont. 449, 51 P.3d 495. We acknowledged testimony from a defense expert witness in *Benoit* that "there is often 'some guess work' associated with determining losses sustained from employee theft" and approved the restitution award as best evidence available. *Benoit*, ¶ 30.

¶15 Prior to the restitution hearing, the State provided the court with a presentence investigation report, which contained information regarding O'Connor's ability to pay and identified two victims. The report detailed the amount of the Danielsons' loss as well as the amount their insurance company had paid to reimburse them for the loss. The District Court received additional evidence regarding the victims' financial loss.

6

¶16 Officer Burnison testified that he relied heavily on the Danielsons to determine which receipts were processed illegally. He explained that the receipts in question evidenced a return, but either did not have a customer's signature on the back of the receipt or had a name which appeared invalid or fictitious. Officer Burnison told the court that he carefully analyzed each receipt provided to him by the Danielsons, interviewed employees to determine whether they had processed any of the questionable returns, and excluded any returns that occurred during a time when it was uncertain whether O'Connor was working. He testified that he had received a letter from the insurance company indicating the amount it had paid to the Danielsons. O'Connor attempted to cast doubt on the reliability of the method the State used to calculate the restitution through cross-examination of the State's two witnesses, but she did not present any evidence at the hearing of an alternative method for calculating restitution. The District Court essentially accepted the State's calculation, but further reduced the amount by an additional $1,000 to account for any receipts which may have been processed while O'Connor was not working.

¶17 We conclude that the method the State used to calculate the losses caused by O'Connor's deceptive acts was "reasonable based on the best evidence available under the circumstances presented in this case." *Benoit*, ¶ 30. Accordingly, the District Court did not err in determining the amount of restitution owed by O'Connor.

¶18 Affirmed.

/S/ JIM RICE

7

We concur:

/S/ MIKE McGRATH
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON