No. 01-300

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 80

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

EDDIE OTTO OHMS,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
                     In and for the County of Ravalli,
                     The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Steven N. Eschenbacher, Hamilton, Montana

        For Respondent:

                Mike McGrath, Montana Attorney General, Jim Wheelis, Assistant
           Montana Attorney General, Helena, Montana; George H. Corn, Ravalli
    County Attorney, Hamilton, Montana

Submitted on Briefs: October 11, 2001

Decided:  April 29, 2002

Filed:

_____
                    Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Respondent State of Montana filed an information in the Twenty-First Judicial District Court, Ravalli County, charging Appellant Eddie Ohms with felony theft. Ohms filed a motion to dismiss which argued that the Ravalli County Justice Court retained original jurisdiction over the matter, as the allegedly stolen property was worth less than the statutory minimum required of felony theft. The District Court denied Ohms' motion and a jury found Ohms guilty of felony theft. Ohms appeals. We reverse.

¶2 The sole issue on appeal is whether the State presented sufficient evidence regarding the value of a masonry saw to convict Ohms of felony theft.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On April 28, 2000, the State charged Ohms by information with one count of felony theft and one count of misdemeanor theft in violation of § 45-6-301, MCA. As to the felony charge, the State alleged that "[o]n or about March 13, 1999, [Ohms] purposely or knowingly obtained unauthorized control" of a masonry saw, valued at over $1,000. As to the misdemeanor charge, the State alleged that "[o]n or about April 12, 1999, [Ohms] purposely or knowingly obtained or exerted unauthorized control over property belonging to tenants of a butcher shop . . . ." The State valued the stolen butcher shop property, consisting of butcher knives and a portable stereo, at less than $1,000.

2

¶4 Ohms plead not guilty to both offenses and filed motions to dismiss both charges on jurisdictional grounds. Ohms argued that the saw was worth less than the statutory minimum required to obtain a felony conviction. Further, Ohms asserted that a district court maintains original jurisdiction over misdemeanor offenses only upon the existence of certain statutorily defined circumstances. Ohms claimed that none of those circumstances existed. Therefore, Ohms insisted that the Ravalli County Justice Court retained original jurisdiction over both of the alleged offenses.

¶5 On June 28, 2000, the District Court denied Ohms' motion to dismiss the felony charge. The State subsequently conceded that the District Court lacked original jurisdiction over the misdemeanor charge, and on September 21, 2000, the District Court dismissed the same. On October 6, 2000, the State filed an amended information to reflect the dismissal of the misdemeanor offense and the case proceeded to trial on the felony allegation. On October 19, 2000, the jury found Ohms guilty of felony theft in violation of § 45-6-301, MCA. On January 30, 2001, the District Court sentenced Ohms to five years in the Montana State Prison, all suspended, so long as Ohms complied with certain delineated conditions. Ohms filed a notice of appeal which challenges his conviction for felony theft.

### STANDARD OF REVIEW

¶6 We review the sufficiency of the evidence to support a jury verdict to determine whether, after viewing the evidence in the

3

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Merrick*, 2000 MT 124, ¶ 7, 299 Mont. 472, ¶ 7, 2 P.3d 242, ¶ 7.

**DISCUSSION**

¶7   Did the State present sufficient evidence regarding the value of a masonry saw to convict Ohms of felony theft?

¶8   Ohms indicates that, for purposes of his case, the State was required to value the stolen property in excess of $500 to sustain a conviction for felony theft.  Ohms insists that the State failed to establish a market value or reasonable replacement value for the masonry saw at trial.  In the absence of this valuation, Ohms maintains that the statutory presumption valuing stolen property at less than the felony threshold must prevail.  Accordingly, Ohms contends that the evidence did not support a felony theft conviction.

¶9   In 1999, the Legislature amended the felony theft statute to require that the stolen property's value exceed $1000 to effect a felony charge.  However, the amendments did not take effect until October 1, 1999.  The information filed by the State alleged that Ohms committed felony theft on March 13, 1999.  Consequently, the provisions of the felony theft statute in effect on that date, § 45-6-301, MCA (1997), apply to the case at bar.

¶10  Section 45-6-301(7)(b), MCA (1997), provides:

> A person convicted of the offense of theft of property exceeding $500 in value . . . shall be fined not

4

to exceed $50,000 or be imprisoned in the state prison for any term not to exceed 10 years, or both.

In a felony theft case, the value of the property taken is an essential element which must be proven beyond a reasonable doubt. *State v. Sunday* (1980), 187 Mont. 292, 300, 609 P.2d 1188, 1193. Section 45-2-101(74)(a), MCA (1997), defines value as follows:

> "Value" means the market value of the property at the time and place of the crime or, if the market value cannot be satisfactorily ascertained, the cost of the replacement of the property within a reasonable time after the crime.

Finally, § 45-2-101(74)(b), MCA (1997), provides:

> When it cannot be determined if the value of the property is more or less than $500 by the standards set forth in subsection (74)(a), its value is considered to be an amount less than $500.

¶11      At trial, the aggrieved owner, Todd Bruhnke, testified that he purchased the used saw approximately nine years prior to the theft for $400. Bruhnke also testified that after the purchase he had the motor rebuilt for $600. Subsequently, the State elicited expert testimony from a salesman within the masonry industry to establish the value of the stolen property. On direct examination, the State and the expert engaged in the following colloquy:

> Q: Have you become familiar . . . with the market values of masonry saws?
>
> A: Yes, I have.
>
> Q: At some point in time, did you become familiar with the specifications of a masonry saw that had been owned by Todd Bruhnke?
>
> A: Yes, I have.

Q: Do you know what kind of a motor that we're talking about . . . here?

A: That motor, new, is going for right around $800. You can get a replacement motor for about $700. If you wanted to go high efficient, about $850. That's just for the motor. It's not counting the arm, the housing, . . . or the water portion.

. . . .

Q: [W]hat are we talking about for an entirely new unit?
A: An entire new saw, full list price is $3,924.

However, on cross-examination, the expert testified to the following:

Q: The price (sic) that you were quoting, those are for new parts like a new motor?

A: Replacement parts, yes.

Q: Is it possible to get used parts?

A: It's possible to get used parts. My sources would be new.

. . . .

Q: So, if [this saw has] been used for nine years and rebuilt once, how much do you think it's worth?

. . . .

A: I couldn't say, not for used. I can only give you my prices on new parts.

¶12      In convicting Ohms of felony theft, the jury presumably found that the value of the masonry saw exceeded $500 based on the expert's replacement valuation. However, § 45-2-101(74)(a), MCA (1997), clearly and unambiguously provides that evidence of replacement value is to be considered only when the market value "cannot be satisfactorily ascertained." In other words, if the

6

State is unable to present evidence of the stolen item's market value, it must establish that the market value of the stolen item cannot be ascertained before it resorts to the alternative of establishing value by proof of replacement value alone.

¶13 Clearly, the State's expert could not provide a market value for the stolen saw at the time and place of the crime, nor was he asked by the State to do so. Further, the State failed to establish that the market value could not be satisfactorily ascertained. Instead, the State chose to rely exclusively on the replacement value to meet its burden of proof. The State failed to establish the necessary predicate to the use of replacement value for purposes of determining "value" under § 45-2-101(74)(a), MCA (1997). Accordingly, no rational finder of fact could have found the essential elements of felony theft, as defined by statute, beyond a reasonable doubt.

¶14 Our holding here is in accord with our decision in *State v. Martin*, 2001 MT 83, 305 Mont. 123, 23 P.3d 216. In *Martin*, we interpreted the statutory definition of "value" to place the burden of proof on the State to establish the market value for stolen property or, in the alternative, that the market value cannot be satisfactorily ascertained, prior to proceeding to a replacement valuation. We recognize that *Martin* was decided in May of 2001. The case at bar proceeded to trial in October of 2000 and Ohms filed his notice of appeal on December 29, 2000. Nevertheless, *Martin* governs the disposition of this case pursuant to the principles discussed in *State v. Goebel* and *State v.*

*Giddings*, 2001 MT 155, 306 Mont. 83, 31 P.3d 340, *limited by Gundrum v. Mahoney*, 2001 MT 246, 307 Mont. 96, 36 P.3d 890.

¶15  In *Goebel* and *Giddings*, ¶ 20, we cited *Bouie v. Columbia* (1964), 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894, for the proposition that if a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," it must not be applied retroactively.  However, *Martin's* interpretation of the "value" definition did not represent a construction that was "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," because this Court had not previously interpreted the statutory "value" definition for purposes of the issues raised in this case and *Martin*.  Further, in *Goebel* and *Giddings*, ¶ 23, we stated:

> [A] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.  Thus, a court's interpretation of a statute is never new law because the decision declares what the statute meant from the day of its enactment, not from the date of the decision. [Citations omitted.]

Accordingly, for purposes of this appeal, *Martin* should be given retroactive effect.

¶16  Pursuant to *Martin*, the State failed to carry its burden of proof.  The State had the opportunity to offer to the jury an instruction on the lesser included offense of misdemeanor theft. It initially proposed such an instruction but elected to withdraw it prior to trial.  Therefore, the only charge before the jury was

8

that of felony theft. Accordingly, the felony theft conviction is reversed, the charge is dismissed, and the sentence entered pursuant to the conviction for felony theft is vacated.

¶17  Reversed.

/S/ PATRICIA COTTER

We Concur:

/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ JAMES C. NELSON