No. 02-673

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 234

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

CARL DUNKERSON,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                In and for the County of Lake, Cause No. DC 2001-27
                The Honorable Kim Christopher, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Dean Knapton, Kalispell, Montana

        For Respondent:

        Mike McGrath, Montana Attorney General, Jim Wheelis, Assistant Montana
        Attorney General, Helena, Montana; Robert Long, Lake County Attorney,
        Polson, Montana

                                Submitted on Briefs:  May 1, 2003

                                Decided:  September 8, 2003

Filed:


_____
                    Clerk

Justice James C. Nelson delivered the Opinion of the Court.

## I. INTRODUCTION

¶1    Carl Dunkerson (Dunkerson) appeals from the amended judgment entered by the Twentieth Judicial District Court, Lake County, ordering him to pay restitution. We affirm in part, reverse in part, and remand for proceedings consistent with this Opinion.

¶2    We address the following issues on appeal:

¶3    1.    Did the District Court err in ordering Dunkerson to pay restitution when the Presentence Investigation report did not contain victim pecuniary loss documentation?

¶4    2.    Did the District Court err in basing pecuniary loss findings on the victim's listing of valuations not founded on market value?

¶5    3.    Did the District Court err when it included Mikulecky's out-of-pocket expenses as part of the restitution amount owed?

## II. FACTUAL AND PROCEDURAL BACKGROUND

¶6    Patricia Mikulecky (Mikulecky) owns the home of her deceased parents, who accumulated, during their lifetimes, much personal property which was contained within the home. Mikulecky herself also stored some of her personal property at the home, as did her brother.

¶7    On February 7, 2001, Appellant Dunkerson, along with two other individuals, burglarized Mikulecky's parents' home and other homes. The burglary resulted in considerable damage to the accumulated personal property.

¶8    Dunkerson pled guilty to two counts of felony theft and four counts of felony

2

burglary. On July 16, 2001, a Presentence Investigation (PSI) report was filed. It contained pecuniary loss figures for other victims; however, it attributed no such loss figure to Mikulecky. Rather, the PSI report noted the pecuniary loss figure for Mikulecky was an "undetermined amount." The PSI report further contained information regarding Dunkerson's financial resources, namely $2,500.00 in assets and $7,000.00 in debts. The PSI report also stated Dunkerson was taking home $1,000.00 per month and was capable of paying restitution. The District Court entered Judgment and Commitment against Dunkerson on August 8, 2001.

¶9 On May 2, 2002, the District Court heard testimony from Mikulecky concerning a handwritten list delineating specifically what property had been damaged, destroyed, or lost from her parents' home. The list also delineated the monetary value attributable to each article of property, with a grand total of $24,312.00. In this grand total, Mikulecky also included $7,180.00 in cleanup costs, based on 718 hours Mikulecky and others spent working (at $10.00 per hour) and $860.00 (per Mikulecky's testimony) in travel and food costs.

¶10 Mikulecky determined the monetary value for each article of property from memory, comparison shopping, and actual receipts, although she provided only five receipts. Regarding Mikulecky's monetary valuations of the damaged, destroyed, or lost property, she stated she sold cosmetics so she knew the value of her missing inventory. She received an estimate and provided receipts for a guitar and silverware, as well as receipts for the prices of a computer, sewing machine, and drill. For the remaining items, Mikulecky estimated the

values. She stated she had not attempted to find the market value for the items and used instead the original cost.

¶11 The May 2, 2002 hearing was continued until June 6, 2002, to provide Dunkerson sufficient time to review the receipts the Respondent State of Montana (State) provided on the day of the hearing. Dunkerson provided no new valuation evidence during this June 6, 2002 hearing, nor did he contradict Mikulecky's valuations.

¶12 On July 29, 2002, the District Court entered its amended judgment ordering Dunkerson "jointly and severally liable for restitution" in the amount of $24,312.00.

¶13 Dunkerson now appeals the District Court's judgment.

### III. STANDARD OF REVIEW

¶14 In cases involving criminal sentences, we review a district court's sentence for legality. *State v. Montoya*, 1999 MT 180, ¶ 15, 295 Mont. 288, ¶ 15, 983 P.2d 937, ¶ 15. Specifically, we review whether the sentence imposed was within the parameters provided by statute. *Montoya*, ¶ 15. **We review a district court's findings of fact to determine whether the findings are clearly erroneous.** *State v. Perry* (1997), 283 Mont. 34, 36, 938 P.2d 1325, 1327.

### IV. DISCUSSION

¶15 **1.    Did the District Court err in ordering Dunkerson to pay restitution when the Presentence Investigation report did not contain victim pecuniary loss documentation?**

¶16 Dunkerson argues that the District Court must order a probation officer to document a victim's pecuniary loss, an offender's financial resources, and an offender's future ability

4

to pay restitution to comply with § 46-18-242(1), MCA. The State contends the May 2, 2002, hearing provided sufficient documentation to satisfy the pecuniary loss requirement of the statute.

¶17 A sentencing judge must mandate payment of full restitution by an offender to a victim should the sentencing judge find the victim suffered a pecuniary loss. Section 46-18-201(5), MCA. Before mandating payment of full restitution, however, a sentencing judge must find that the requirements of §§ 46-18-241 through 249, MCA, are satisfied. Section 46-18-201(5), MCA; *State v. Pritchett*, 2000 MT 261, ¶ 7, 302 Mont. 1, ¶ 7, 11 P.3d 539, ¶ 7 (holding the pecuniary loss requirement of § 46-18-242(1), MCA, was not satisfied where no plea agreement existed).

¶18 Failure of a PSI report to contain documentation of a victim's pecuniary loss and an offender's financial resources and future ability to pay renders a district court's sentencing of restitution illegal. *State v. Muhammad*, 2002 MT 47, ¶ 47, 309 Mont. 1, ¶ 47, 43 P.3d 318, ¶ 47. However, a full evidentiary hearing can vitiate the need for pecuniary loss documentation in a PSI report. *State v. Hilgers*, 1999 MT 284, ¶ 9, 297 Mont. 23, ¶ 9, 989 P.2d 866, ¶ 9 (holding the pecuniary loss requirement of § 46-18-242(1), MCA, was satisfied where a plea agreement existed, thereby allowing the District Court to determine the restitution amount should the parties not agree to an amount); *State v. Benoit*, 2002 MT 166, ¶ 25, 310 Mont. 449, ¶ 25, 51 P.3d 495, ¶ 25 (holding the pecuniary loss requirement of § 46-18-242(1), MCA, was satisfied where the PSI noted a supplemental hearing should be conducted, such hearing was held, and testimony of the victim's pecuniary losses was

5

documented).

¶19 Here, the PSI report listed Dunkerson as having $2,500.00 in total assets, $7,000.00 in total debts, and $1,000.00 per month in current take-home pay. Further, the report noted Dunkerson was currently capable of paying restitution, thereby satisfying the financial resources and future ability to pay requirements of § 46-18-242(1), MCA.

¶20 Mikulecky's pecuniary loss was listed in the PSI as an "undetermined amount." However, the PSI also noted Mikulecky needed more time to accurately account for the restitution owed her. Much like the PSI report in *Benoit*, a pecuniary loss amount was not listed but a reason was given for its absence. Here, the reason was Mikulecky's need for more time. Further, much like the victim in *Benoit*, Mikulecky testified at the restitution hearing as to what property was damaged, destroyed, or lost from her parents' home and as to the valuation of that property. Thus, like the offender in *Benoit*, Dunkerson was afforded an opportunity to present evidence at the restitution hearing and to cross-examine Mikulecky regarding her valuation testimony. Therefore, as in *Benoit*, we conclude that the pecuniary loss requirement of § 46-18-242(1), MCA, was satisfied. The District Court did not err in ordering Dunkerson to pay restitution when the PSI report did not contain the amount of Mikulecky's pecuniary loss.

¶21 Before we turn to the second issue, we note here that although § 46-18-242(1), MCA, was satisfied, the State concedes that the District Court did not comply with the statutory requirements of § 46-18-244, MCA, when ordering restitution. Specifically, the State concedes the District Court failed to specify the total amount to be paid and the method and

time of payment of the restitution. We agree with the State.

¶22 We conclude that the District Court erred by not specifying the amount of restitution Dunkerson owed and the time and method of payment of the restitution. Therefore, we remand this case to the District Court. The District Court must set the amount of restitution and an installment payment schedule for Dunkerson in accordance with the statutory requirements of § 46-18-244, MCA.

¶23 Because we remand for rehearing, we now address the remaining two issues Dunkerson raises.

¶24 **2. Did the District Court err in basing pecuniary loss findings on the victim's listing of valuations not founded on market value?**

¶25 Dunkerson next argues Mikulecky's valuation testimony, of a guitar and silverware for example, was not based on fair market value, but rather was based on replacement cost. The State contends some of Mikulecky's valuations were based on market value. Regardless, the State contends it should be allowed a rehearing so it may establish market value: (1) for new items, applying the purchase value to those items; (2) for items for which the owner or another witness may establish a market value at the time of loss by hearsay testimony, otherwise, market value; and (3) for items for which no market value can be established, applying replacement value to those items.

¶26 According to § 45-2-101(76)(a), MCA, value means "the market value of the property at the time and place of the crime or, *if the market value cannot be satisfactorily ascertained*, *the cost of the replacement* of the property within a reasonable time after the crime."

7

[Emphasis added]. *See also State v. Pritchett*, 2000 MT 261, ¶ 24, 302 Mont. 1, ¶ 24, 11 P.3d 539, ¶ 24 (holding that replacement cost is an incorrect valuation method in determining restitution); *State v. Ohms*, 2002 MT 80, ¶ 10, 309 Mont. 263, ¶ 10, 46 P.3d 55, ¶ 10 (citing § 45-2-101(74)(a), MCA (now § 45-2-101(76)(a), MCA)). Much valuation testimony in this case is based on hearsay evidence. But, we held in *State v. Bingman* (1987), 229 Mont. 101, 113, 745 P.2d 342, 349, that hearsay evidence is admissible during sentencing.

¶27 Generally, the prices offered by merchants for their merchandise are market values. *State v. Barker* (1984), 211 Mont. 452, 456, 685 P.2d 357, 360. However, familiarity with the property, *State v. Pitzer*, 2002 MT 82, ¶¶ 11,13, 309 Mont. 285, ¶¶ 11, 13, 46 P.3d 582, ¶¶ 11, 13; experience with the property, *State v. Fox* (1984), 212 Mont. 488, 492, 689 P.2d 252, 254; *State v. Dess* (1984), 207 Mont. 468, 471, 674 P.2d 502, 504, and employment in the field where the property is used, *State v. Pierce* (1992), 255 Mont. 378, 383, 842 P.2d 344, 347-48, have also been held admissible to establish market value.

¶28 Here, we agree with the State regarding Mikulecky's valuation for some of the items. Mikulecky testified she sold cosmetics so she knew which cosmetics were damaged, destroyed, or lost and their respective values. Such valuation is consistent with *Pitzer*, *Fox*, *Dess*, and *Pierce*, because Mikulecky herself had familiarity and experience with the cosmetics, in addition to her employment in the cosmetics field. Further, Mikulecky provided purchase receipts for a computer, sewing machine, and drill. These valuation techniques, to the extent they establish the prices offered by merchants, rightly establish

market value under *Barker* and satisfy § 45-2-101(76)(a), MCA.

¶29 For the remaining items, we conclude, to the extent the value of the property at the time of its loss can be determined, that market value should be applied. Only if the market value cannot be satisfactorily ascertained should the replacement cost of the property be used. Further, we conclude that such valuation testimony for which the owner or another witness may establish a market value at the time of loss can be based on hearsay evidence.

¶30 We remand this case for rehearing so the District Court can receive appropriate testimony to establish the market value for each remaining item which was damaged, destroyed, or lost. We note that replacement cost should only be used when no market value can be established. Section 45-2-101(76), MCA.

¶31 **3.** **Did the District Court err when it included Mikulecky's out-of-pocket expenses as part of the restitution amount owed?**

¶32 Dunkerson argues the District Court was clearly erroneous in finding cleanup costs of $7,180.00 when he provided testimony that a professional would charge $960.00. However, the District Court found such comparison lacking similarity. The cleanup Mikulecky faced after the burglary could not be likened to a professional cleaning a home which had not been burglarized, especially a home, like Mikulecky's, with over fifty years of accumulated property. The State contends Mikulecky's out-of-pocket expenses, namely the cleanup, travel, and food costs, are allowed under § 46-18-243(1), MCA, and our holding in *State v. Benoit*, 2002 MT 166, ¶ 31, 310 Mont. 449, ¶ 31, 51 P.3d 495, ¶ 31. Thus, the District Court's findings are not clearly erroneous.

9

¶33 Under § 46-18-243(1), MCA, a victim can recover all special damages, including out-of-pocket losses. Mikulecky and two other individuals testified as to the work they performed in cleaning up Mikulecky's parents' home after the burglary. Mikulecky also testified as to the travel and food costs she incurred while cleaning up the home. The District Court found Dunkerson's comparison of a professional who cleans homes lacking similarity to Mikulecky's situation.

¶34 A district court judges the credibility of witnesses, and this Court will not disturb such findings unless they are clearly erroneous. *In re Estate of Bradshaw*, 2001 MT 92, ¶ 11, 305 Mont. 178, ¶ 11, 24 P.3d 211, ¶ 11 (citations omitted). We conclude the District Court's determination was not clearly erroneous and that the court did not err in ordering restitution in an amount which included out-of-pocket expenses, as those expenses are allowed by statute.

## V. CONCLUSION

¶35 We remand this cause to the District Court for further proceedings consistent with this Opinion. Specifically, the District Court must comply with the requirements of § 46-18-244, MCA, namely the court must set the amount of restitution and establish a payment installment plan. During these proceedings, the District Court must also require valuation testimony complying with the requirements of § 45-2-101(76), MCA, by applying market value to the damaged, destroyed or lost property, unless such market value cannot be ascertained. We affirm the District Court's allowance of out-of-pocket expenses, including cleanup, travel, and food costs, as these findings are not clearly erroneous and are in

10

compliance with § 46-18-243(1), MCA.

¶36    Affirmed in part; reversed in part; and remanded for further proceedings consistent with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ PATRICIA COTTER
/S/ JIM RICE