No. 05-488

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 246

IN THE MATTER OF T.M.R.,

    A Youth.

APPEAL FROM:    The District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DJ 2005-004,
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Betty M. Carlson, Public Defender's Office, Billings, Montana

    For Respondent:

    Honorable Mike McGrath, Attorney General; Micheal S. Wellenstein,
Assistant Attorney General, Helena, Montana

    Dennis Paxinos, County Attorney, Billings, Montana

Submitted on Briefs:  August 30, 2006

Decided: October 3, 2006

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    T.M.R., a youth under the age of eighteen years at the time of the events giving rise to this case, appeals from an order of the Thirteenth Judicial District Court, Yellowstone County, requiring the youth to pay restitution in the amount of $4,020.00 for a stolen vehicle. We reverse and remand.

¶2    We address the following issues on appeal:

¶3    1. Did the Youth Court err in basing restitution on replacement cost of the vehicle rather than market value?

¶4    2. Did the Youth Court err in not subtracting the salvage value of the vehicle from the amount of restitution?

## BACKGROUND

¶5    Between September 4 and 6, 2004, during the Labor Day weekend, T.M.R. entered his friend's parents' home in Billings, Montana, while the family was out of town for the holiday weekend. T.M.R. took the keys to the 1998 Chevy Blazer parked in the garage, and took the vehicle for a joyride with his friend and co-defendant, R.R. While driving the vehicle off road, the Blazer became stuck. When the boys attempted to tow the vehicle out, the tow rope broke, causing the Blazer to roll backward and strike a tree. T.M.R. and R.R. left the vehicle there, intending to come back for it the next day. When the boys returned, they found that the stereo had been stolen out of the vehicle. The Blazer was damaged beyond repair.

2

¶6     T.M.R. was charged with burglary (felony) in District Court on November 8, 2004. On January 5, 2005, the parties stipulated to transfer the case to Youth Court. The State filed a petition in Youth Court alleging T.M.R. was a delinquent youth by reason of committing the offense of burglary (felony). After initially pleading not guilty, T.M.R. changed his plea and admitted to the offense. The Youth Court accepted his admission and set a dispositional hearing.

¶7     At the dispositional hearing, the Youth Court adjudicated T.M.R. to be a delinquent youth. T.M.R. was placed on probation until age twenty-two, supervised by adult probation pursuant to § 41-5-208, MCA, and the parties' stipulation. He was also ordered to pay restitution, which is the subject of this appeal.

¶8     The parties disagreed on the amount of restitution T.M.R. owed the victim. The victim provided a bill of sale indicating he paid $3,587.00 for the vehicle, a number of receipts indicating he paid $1,745.50 for prior repairs on the vehicle, and a receipt from the State of Montana showing he paid $156.90 to register the vehicle. In addition, he estimated the value of the stereo was approximately $840.00, but had no receipts to verify this.

¶9     The victim requested that restitution be based on the Kelley Blue Book retail value of the vehicle, which suggested that retail value was $6,775.00 as of September 16, 2004, in addition to the $840.00 for the stereo equipment, for a total of $7,615.00. The State conceded that a closer reflection of restitution could be determined by adding the purchase price, the repairs, the registration costs, and stereo equipment, for a total of

3

$6,329.40. Because the co-defendant had already agreed to pay $3,200.00, this would leave T.M.R. with approximately $3,200.00 to pay as well. T.M.R. requested that this amount be reduced by the amount the victim received for salvage of the vehicle, which was understood to be $400.00 at that time. T.M.R. then stated he would be willing to settle on $2,500.00 as his payment. Because an agreement could not be reached, the court set a restitution hearing.

¶10     At the restitution hearing, the victim again requested the Kelley Blue Book retail value for the vehicle, this time indicating it was worth $6,380.00 as of March 15, 2005, and $840.00 for the stereo equipment, for a total of $7,220.00. He testified that this would be an amount that would allow him to replace the vehicle. He also stated that he believed T.M.R. should pay more in restitution than R.R. because T.M.R. was more culpable and R.R. was just along for the ride. The victim testified that he received $500.00 when he sold the vehicle as salvage. T.M.R., on the other hand, requested that restitution be set at the State's valuation at the dispositional hearing, which was $6,329.40, less $500.00 for salvage value and $3,200.00 the co-defendant had already agreed to pay. Thus, T.M.R. argued he was responsible for $2,629.40.

¶11     On May 19, 2005, the Youth Court determined the full restitution amount to be $7,220.00, and ordered T.M.R. to pay the balance of $4,020.00. The decision was based on the victim's testimony regarding the Kelley Blue Book retail value of the vehicle plus the estimated value of the stereo. The court subtracted the amount R.R. agreed to pay, but not the salvage value the victim received. T.M.R. appeals.

4

## STANDARD OF REVIEW

¶12 The court's determination of the appropriate measure of restitution is a question of law. The standard of review of a court's conclusions of law is whether the court's interpretation of the law is correct. *State v. Pritchett*, 2000 MT 261, ¶ 18, 302 Mont. 1, ¶ 18, 11 P.3d 539, ¶ 18.

## DISCUSSION

¶13 **1. Did the Youth Court err in basing restitution on replacement cost of the vehicle rather than market value?**

¶14 Pursuant to § 41-5-208, MCA, a youth court case can be transferred to district court when a youth is between the ages of eighteen and twenty-one to ensure continued compliance with the youth court's disposition under § 41-5-1512 or 41-5-1513, MCA. T.M.R. was adjudicated a delinquent youth by the Youth Court and his case was transferred to the District Court pursuant to § 41-5-208, MCA, for supervisory responsibility. The Youth Court sentenced T.M.R. pursuant to §§ 41-5-1512 and 41-5-1513, MCA, and ordered T.M.R. to pay restitution for the victim's damages resulting from the burglary. In determining whether restitution is appropriate in a case, the court can consider a number of factors, including the age of the youth, the ability of the youth to pay, the ability of the parents or guardians to pay, the amount of damage to the victim, and legal remedies of the victim. Section 41-5-1521, MCA. In this case, the Youth Court determined restitution was appropriate and based the amount on the replacement retail value of the vehicle as suggested by the Kelley Blue Book. The parties do not

5

dispute the value of the stereo, so only the amount of restitution owed for the vehicle is at issue.

¶15    T.M.R. argues that in determining the amount of damage to the victim, the loss should be based on the market value of the vehicle documented by receipts provided by the victim, rather than replacement value suggested by the Kelley Blue Book retail price. T.M.R. relies on *State v. Pritchett* as the rule for measuring pecuniary damages in a youth court case.  In *Pritchett*, this Court stated that the appropriate measure of pecuniary loss is the market value of the property at the time of its destruction rather than the replacement value.  *Pritchett*, ¶ 19.  The Court applied the definition of pecuniary loss found in § 46-18-243(1)(a), MCA (1997), which at that time defined it as "all special damages . . . that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities."  *Pritchett*, ¶ 20.  The parties in that case agreed that the appropriate civil action arising out of Pritchett's criminal activities would be an action for conversion.  The remedy for conversion of personal property is presumed to be based on the value of the property at the time of its conversion.  *Pritchett*, ¶ 20 (citing § 27-1-320(1), MCA).  Thus, the Court held that the replacement cost was an incorrect measure of restitution, and that restitution must be based on the market value of the goods converted.  *Pritchett*, ¶ 24.  However, *Pritchett* does not involve restitution in a juvenile case and it interprets adult sentencing statutes under Title 46, Chapter 18, Part 2, MCA, that were revised in 2003.  Thus, it is not wholly determinative of T.M.R.'s case.

¶16 On the other hand, the State argues that the Youth Court was authorized to order restitution based on the definition of pecuniary loss found in § 46-18-243, MCA, which was revised in 2003 to include "the full replacement cost of property taken, destroyed, harmed, or otherwise devalued as a result of the offender's criminal conduct." Section 46-18-243(1)(b), MCA. T.M.R. responds, and we agree, that it is not appropriate to apply the adult sentencing statutes in this situation. As stated, T.M.R.'s case was transferred to district court pursuant to § 41-5-208, MCA, under the Youth Court Act, after disposition pursuant to §§ 41-5-1512 and 41-5-1513, MCA. If a youth violates a disposition imposed under §§ 41-5-1512 or 41-5-1513, MCA, then the district court may impose conditions as provided under §§ 46-18-201 through 46-18-203, MCA. Section 41-5-208(4), MCA. Section 46-18-201(5), MCA, states that when the victim suffers a pecuniary loss as defined by § 46-18-243, MCA, the court shall impose restitution pursuant to §§ 46-18-241 through 46-18-249, MCA. The definition of pecuniary loss found in § 46-18-243, MCA, specifically states that it applies to §§ 46-18-241 through 46-18-249, MCA.

¶17 There is no evidence in this case that T.M.R. has violated his disposition conditions, and therefore he is not subject to sentencing under §§ 46-18-201 through 46-18-203, MCA. Thus, the conditions of restitution outlined in §§ 46-18-241 through 46-18-249, MCA, including the definition of pecuniary loss, do not apply to T.M.R.'s disposition under the Youth Court Act.

7

¶18 We are left with the question of what is the appropriate measure of damages for determining the amount of restitution in a youth court case. The Youth Court Act lists factors for the court to consider in determining whether restitution is appropriate, but is silent on how to determine the amount of restitution. Section 41-5-1521, MCA. If the court finds restitution is appropriate, it may order a delinquent youth to pay restitution "for damages that result from the offense for which the youth is disposed by the youth or by the person that contributed to the delinquency of the youth." Sections 41-5-1512, 41-5-1513, MCA. It defines restitution as "payments in cash to the victim or with services to the victim or the general community when these payments are made pursuant to a consent judgment, consent decree, or other youth court order." Section 41-5-103(33), MCA (2003). These statutes do not provide guidance on how to determine restitution, and therefore, we are forced to fill in the gap left by the legislature in an "equitable fashion that most nearly effectuates the intent of the legislature." *Buck v. Billings Montana Chevrolet, Inc.*, 248 Mont. 276, 281, 811 P.2d 537, 540 (1991).

¶19 Prior to the 2003 statutory amendment to the adult sentencing statutes, restitution was consistently based on market value if it could be ascertained. *See Pritchett*, ¶ 24; *State v. Dunkerson*, 2003 MT 234, ¶¶ 26, 29, 317 Mont. 228, ¶¶ 26, 29, 76 P.3d 1085, ¶¶ 26, 29; *State v. Heath*, 2004 MT 126, ¶ 52, 321 Mont. 280, ¶ 52, 90 P.3d 426, ¶ 52. Unlike the adult sentencing statutes, the Youth Court Act was not amended in 2003 to include replacement cost as a way to determine restitution. Therefore, we conclude the

8

more equitable and consistent approach to determining restitution under the Youth Court Act is to measure damages based on market value.

¶20     The victim in this case is entitled to the market value of the vehicle rather than the replacement cost of the vehicle.  In determining market value, this Court has stated previously, "[g]enerally, the prices offered by merchants for their merchandise are market values."  *Dunkerson*, ¶ 27 (citing *State v. Barker*, 211 Mont. 452, 456, 685 P.2d 357, 360 (1984)).  Purchase receipts are one way to establish market value.  *Dunkerson,* ¶ 28.

¶21     **2. Did the Youth Court err in not subtracting the salvage value of the vehicle from the amount of restitution?**

¶22     T.M.R. argues, and the State concedes, that the $500.00 in salvage value the victim received for the vehicle should be deducted from the total pecuniary loss.  When stolen property is recovered and sold for its salvage value, as in this case, the restitution should be reduced by the amount of salvage received.  *State v. Beavers*, 2000 MT 145, ¶ 12, 300 Mont. 49, ¶ 12, 3 P.3d 614, ¶ 12.

¶23     Accordingly, we remand this case to the Youth Court with instructions to calculate the amount of restitution owed based on the market value of the vehicle, consistent with the guidelines set forth in this opinion.

/S/ W. WILLIAM LEAPHART

We concur:
/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON

9